IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION<br><br>Plaintiff,<br><br>ELODIA SANCHEZ<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>EVANS FRUIT CO., INC.<br><br>Defendant,<br><br>and<br><br>JUAN MARIN and ANGELITA MARIN, a marital community,<br><br>Defendants-Intervenors. | NO.  CV-10-3033-LRS<br><br>**ORDER RE MOTION<br>FOR PROTECTION ORDER** |

**BEFORE THE COURT** is Plaintiff-Intervenor's "Motion For Protection Order" (Ct. Rec. 246).  The court exercises its discretion to hear and determine this motion without oral argument for the time being.  LR7.1(h)(3)iv.

**IMMIGRATION STATUS AND OTHER DAMAGES-RELATED DISCOVERY**

Plaintiff-Intervenor asserts her immigration status is irrelevant to her claim

**ORDER RE MOTION
FOR PROTECTION ORDER-      1**

for actual damages. She notes that she is not seeking back pay under federal Title VII, but only under the Washington Law Against Discrimination (WLAD), RCW 49.60.180. "Back pay" represents damages awarded to an employee or ex-employee when an employer unlawfully prevents that individual from working. "Uncompensated wages" are already earned wages which have not been collected by the employee or ex-employee.

Apparently, Plaintiff-Intervenor makes no claim for "uncompensated wages," but asserts that because of her alleged constructive discharge from her employment with Defendant Evans Fruit due to alleged sexual harassment by Defendant Juan Marin, she was deprived of the opportunity to continue earning wages at Evans Fruit and should be compensated for those lost earnings (back pay). Evans Fruit contends immigration status is relevant to recovery of these actual damages in that such damages should not be recovered by her if she was not legally authorized to work in the United States.

In a recent order entered in another case, *Rodriguez v. ACL Farms*, CV-10-3010-LRS at Ct. Rec. 91, this court concluded immigration status was relevant to recovery of certain actual pecuniary damages under the federal Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801-1872 (AWPA) and Washington's Farm Labor Contractors Act (FLCA), RCW Chapter 19.30. In *Rodriguez*, the case has been bifurcated such that liability and statutory damages, as to which immigration status is irrelevant, will be determined in an initial phase, whereas actual pecuniary damages, as to which immigration status is relevant, will be determined in a subsequent phase. Discovery regarding immigration status has been deferred until the subsequent phase. The court ordered this bifurcation on its own motion.

**ORDER RE MOTION**
**FOR PROTECTION ORDER-      2**

In its order in *Rodriguez*, this court noted that *Rivera v. Nibco, Inc.*, 364 F.3d 1057 (9th Cir. 2004), a Title VII case, did not settle the issue of the relevancy of immigration status to an award of actual pecuniary damages for work not performed and did not foreclose the possibility that immigration status, although clearly irrelevant to the liability determination, had potential relevance to appropriate remedies in the event the employer was found liable. (Ct. Rec. 91 at pp. 5-7). Plaintiff-Intervenor says she is not seeking back pay under Title VII, but only under Washington state law. Plaintiff-Intervenor cites *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 230 P.3d 583 (2010), a personal injury case in which the Washington Supreme Court held that with regard to recovery of lost future earnings, the probative value of the plaintiff's undocumented status, by itself, was substantially outweighed by the danger of unfair prejudice and therefore, the trial court had abused its discretion in admitting evidence of that status. The court did not deem immigration status irrelevant. It specifically held that plaintiff's "immigration status is relevant to the issue of lost future earnings." *Id*. at 671. Even when evidence is relevant, however, it is subject to exclusion if its probative value is substantially outweighed by the danger of unfair prejudice (Fed. R. Evid. 403/ER 403), and this was the holding in *Salas*.

*Salas* is not inconsistent with *Rivera* or this court's order in *Rodriguez*. This court will allow discovery into the Plaintiff-Intervenor's immigration status because it is relevant to the issue of the amount of certain actual pecuniary damages to which she may be entitled.[1] Whether her immigration status is ultimately deemed admissible at trial is another question which need not be

---

[1] It is clearly irrelevant to non-pecuniary losses, such as emotional distress damages.

**ORDER RE MOTION
FOR PROTECTION ORDER-    3**

answered now.  See Fed. R. Civ. P. 26(b)(1)("[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence").  The parties have heretofore agreed that bifurcation of the case into liability and damages phases is not necessary.  The court, however, retains the discretion to *sua sponte* order such a bifurcation, *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996), and this may ultimately be justified as it was in *Rodriguez*.[2]  Assuming evidence of immigration status is allowed at the single jury trial on liability and damages currently contemplated, the court has significant concern that despite a limiting instruction, some jurors would consider an individual's undocumented status to find no liability on the part of the employer, despite the fact that such status is clearly irrelevant to the liability question.  Without a bifurcation, the court must acknowledge that the argument for finding immigration status inadmissible on the basis that its probative value is outweighed by its danger of unfair prejudice is significantly more compelling.  Put another way, the Defendant's argument for the admissibility of such evidence on the question of actual damages would be significantly more compelling if there were a separate trial dedicated to the issue of damages in the event liability has already been established.

      The court is inclined to consider whether this case should be bifurcated into liability and damages phases given the nature of the concerns discussed above.[3]

---

[2] This would be a bifurcation of all the claims: the claims of Plaintiff-Intervenor and the claims of those individual charging parties and class members represented by Plaintiff EEOC.

[3] If liability were established, it appears appropriate injunctive relief could be awarded without any further delay.

**ORDER RE MOTION
FOR PROTECTION ORDER-      4**

The parties should, however, be given an opportunity to be heard on the topic and to present further arguments, either in support of or in opposition to bifurcation. The parties may serve and file memoranda, no longer than ten (10) pages in length, no later than fifteen (15) days from the date of this order.

**LIABILITY-RELATED DISCOVERY**

The vast majority of the discovery at issue pertains to damages issues, including emotional distress damages arising from any liability on the part of Defendant for sexual harassment under Title VII or under the WLAD.[4]

Plaintiff-Intervenor also asserts a common law claim for negligent infliction of emotional distress. A plaintiff may recover for negligent infliction of emotional distress if she proves negligence: duty, breach of the standard of care, proximate cause, and damage, and the additional requirement of objective symptomatology. *Strong v. Terrell*, 147 Wn.App. 376, 387, 195 P.3d 977 (2008). A plaintiff must

---

[4] The elements of these claims are very similar. Under Title VII, it must be proven that an employee was subjected to verbal or physical conduct of a sexual nature, that the conduct was unwelcome, and that the conduct was sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive work environment. *EEOC v. California Psychiatric Transitions, Inc.*, 644 F.Supp.2d 1249, 1274 (E.D. Cal. 2009), citing *Rene v. MGM Grand Hotel, Inc.* 305 F.3d 1061, 1065 (9th Cir. 2002)(en banc). Under the WLAD, the elements of a hostile work environment claim are: (1) the complained of conduct must be unwelcome, undesirable or offensive; (2) the employee would not have suffered the harassment if she had been of a different sex; (3) the harassment must be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment; and (4) the harassment must be imputable to the employer. *Henningsen v. Worldcom, Inc.*, 102 Wn.App. 828, 841, 9 P.3d 948 (2000).

**ORDER RE MOTION FOR PROTECTION ORDER-    5**

prove that her emotional distress is accompanied by objective symptoms and the emotional distress must be susceptible to medical diagnosis and proved through medical evidence. *Id*. at 388. Physical manifestation of the emotional distress, however, is not necessary. *Hegel v. McMahon*, 136 Wn.2d 122, 133, 960 P.2d 424 (1998).

     A negligent infliction of emotional distress claim seeks recovery for infliction of emotional distress, not merely as an element of damages arising from tort liability apart from the emotional distress, but in recognition of infliction of emotional distress as an independent basis of tort liability. *Brower v. Ackerley*, 88 Wn.App. 87, 96-97, 943 P.2d 1141 (1997). Importantly, recovery pursuant to a negligent infliction of emotional distress claim cannot be had where the factual basis for that claim is the same as the sexual harassment or discrimination claim. *Haubry v. Snow*, 106 Wn.App. 666, 678, 31 P.3d 1186 (2001). A review of the Complaint In Intervention (Ct. Rec. 133) indicates the factual basis for Plaintiff-Intervenor's negligent infliction of emotional distress claim is the same as her sexual discrimination claim pursuant to the WLAD. Accordingly, it appears that if Plaintiff-Intervenor is to be compensated for emotional distress, it can only be pursuant to liability established on her WLAD claim (and Title VII claim), and not pursuant to an independent negligent infliction of emotional distress claim. As such, the medical records sought by Defendant Evans Fruit would be potentially relevant only to the issue of damages, not liability, and if the case is bifurcated, potentially would be subject to discovery only once liability is established on the sexual harassment claims.

     In their memoranda addressing the proposed bifurcation, the Plaintiff-Intervenor and the Defendants may also wish to address the court's preliminary

**ORDER RE MOTION**
**FOR PROTECTION ORDER-**     **6**

assessment of Plaintiff-Intervenor's negligent infliction of emotional distress claim.

**CONCLUSION**

Immigration status is a troublesome issue. As stated by the court in *Salas*:

> We recognize that immigration is a politically sensitive issue. Issues involving immigration can inspire passionate responses that carry a significant danger of interfering with the fact finder's duty to engage in reasoned deliberation.

168 Wn.2d at 672.

While recognizing that immigration status is relevant to calculation of certain actual pecuniary damages (i.e., back pay), there is significant danger that if such evidence is admitted at a single trial on both liability and damages, it could interfere with the jury's duty to engage in reasoned deliberation regarding liability as to which immigration status is clearly irrelevant. For this reason, the court is proposing a bifurcation whereby there will be separate trials on liability and damages. Liability will be determined in the first phase. If necessary, damages will be determined in a subsequent phase, with perhaps all damages-related discovery deferred until such time.

Within fifteen (15) days of the date of this order, the parties may serve and file memoranda no longer than ten (10) pages in length regarding the proposed bifurcation. Upon receipt of the memoranda, the court will determine if it should also hear oral argument from the parties before determining whether the case will be bifurcated. Plaintiff-Intervenor's "Motion For Protection Order" (Ct. Rec. 246) is **STAYED** pending the court's determination regarding bifurcation.

ORDER RE MOTION
FOR PROTECTION ORDER-    7

1  **IT IS SO ORDERED.** The District Court Executive is directed to enter
2  this order and to provide copies to counsel of record.
3  **DATED** this ___11th___ day of April, 2011.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
United States District Court Judge

**ORDER RE MOTION**
**FOR PROTECTION ORDER-      8**