IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION  )
)
)                Plaintiff,  )
)
and  )
)
)
ELODIA SANCHEZ, et al.,  )
)
    Plaintiffs-Intervenors,  )
)
    v.  )
)
EVANS FRUIT CO., INC.  )
)
                Defendant,  )
)
and  )
)
JUAN MARIN and ANGELITA  )
MARIN, a marital community,  )
)
    Defendants-Intervenors.  )
_____ )

NO.  CV-10-3033-LRS

**SECOND ORDER RE
EVANS FRUIT CO.,
INC.'S MOTION FOR
SUMMARY JUDGMENT**

   **BEFORE THE COURT** is the Defendant Evans Fruit Co., Inc.'s Motion
For Summary Judgment (ECF No. 568).  This motion was heard with oral
argument on May 17, 2012.

   Plaintiff EEOC brings this action pursuant to Title VII of the Civil Rights
Act of 1964, specifically §§ 706(f)(1) and (3), 42 U.S.C. §§ 2000e-5(f)(1) and
(3), on behalf of certain female employees (Charging Parties) and a class of

**SECOND ORDER RE EVANS FRUIT CO.,
INC.'S MOTION FOR SUMMARY JUDGMENT- 1**

1  similarly situated female employees (Class Members), alleging their employer,

2  Defendant Evans Fruit, subjected them to a hostile work environment because

3  of sex.[1]

4      Five of the Class Members (Elodia Sanchez, Esmeralda Aviles, Vanessa

5  Aviles, Danelia Barajas and Cecilia Lua) have intervened as Plaintiffs in

6  EEOC's action, asserting claims against Defendant Evans Fruit for violations of

7  Title VII, the Washington Law Against Discrimination (WLAD), RCW

8  49.60.180(3), and common law negligence.  They also assert claims against the

9  Defendants-Intervenors, Juan and Angelita Marin, for violations of the WLAD.

10

11      **A.  CLASS MEMBERS WHO CANNOT BE LOCATED**

12      EEOC's First Amended Complaint, filed November 29, 2011, identified

13  additional class members, including Wendy Revoloreo (aka Roboloreo), Maria

14  Ines Vargas Herrera, and Leonor Hernandez.  These individuals gave statements

15  to the EEOC investigator, but now cannot be located and the EEOC has been

16  unable to secure their appearances for depositions by Evans Fruit.  The same

17  goes for Adela Lopez whom apparently the parties agree is also a class member,

18  although the court cannot locate her name in the First Amended Complaint.

19  (ECF No. 396).

20      EEOC says it would agree to make these individuals available for

21  deposition prior to trial, if they can be located.  If they cannot be located, EEOC

22  says it will dismiss them from the litigation.  EEOC asserts the record already

23  contains sufficient evidence to preclude summary judgment with regard to the

24  _____

25      [1]Some, if not all, of the currently named charging parties and class members

26  are now former employees of Defendant Evans Fruit.

27  **SECOND ORDER RE EVANS FRUIT CO.,**

28  **INC.'S MOTION FOR SUMMARY JUDGMENT- 2**

sexual harassment claims of these class members.

Almost a year has passed since these individuals were identified as class members. Discovery and dispositive motion deadlines have long since expired and this matter is scheduled for trial in March 2013.[2] It would be inequitable and prejudicial to Defendant to allow these individuals to remain as class members with the prospect of one or more of them suddenly materializing on the eve of trial. Accordingly, based on the equitable doctrine of laches, Wendy Revoloreo (aka Roboloreo), Maria Ines Vargas Herrera, and Leonor Hernandez are **DISMISSED** as EEOC class members. If Adela Lopez has also been named as an EEOC class member, she too is **DISMISSED**.

## B. CHARGING PARTIES AND OTHER CLASS MEMBERS

### 1. Timeliness

With regard to several class members, the timeliness of portions of their sexual harassment (hostile work environment) claims is an issue.

Based on the record before it, the court concludes the intake questionnaire signed by charging party Jacqueline Abundez on July 10, 2006 (Exs. 1 and 2 to ECF No. 555), cannot reasonably be construed as a request for the EEOC to take remedial action. *Federal Express Corporation v. Holowecki*, 552 U.S. 389,

---

[2]In its April 11, 2012 response to Evans Fruit's motion for summary judgment (ECF No. 642 at p. 107), EEOC represented that if it were unable to locate these class members before trial, it would agree to dismiss them from the litigation. At that time, trial was scheduled for June 25, 2012. Five months have now passed since that vacated trial date and these four individuals have still not been produced for depositions.

**SECOND ORDER RE EVANS FRUIT CO.,**
**INC.'S MOTION FOR SUMMARY JUDGMENT- 3**

128 S.Ct. 1158 (2008), abrogating *Casavantes v. California State Univ. v. Sacramento*, 732 F.2d 1441, 1443 (9th Cir. 1984) (all completed intake questionnaires are charges).  The questionnaire at issue here does not contain the type of language which courts have construed as a request for the EEOC to take remedial action.  See *Stewart v. SEIU United Healthcare* Network, 2012 WL 1357633 (N.D. Cal. 2012) at *3.  Nothing in the questionnaire indicates to an objectively reasonable reader that Ms. Abundez wished to activate the "machinery and remedial processes" of the EEOC.  *Holowecki*, 128 S.Ct. at 1147.  Accordingly, the intake questionnaire completed by Ms. Abundez cannot be used to calculate the statute of limitations period.

Instead, the formal charge filed by Ms. Abundez on August 18, 2006, is used to calculate the limitations period.  42 U.S.C. Section 2000e-5(e)(1) bars relief for any conduct that occurred more than 300 days prior the filing of an administrative charge.  Thus, relief for any sexually harassing conduct occurring prior to October 22, 2005 is barred, unless it is actionable by virtue of the continuing violation doctrine.

Where a plaintiff alleges that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,'" *National R.R. Passenger Co., v. Morgan*, 536 U.S. 101, 116, 122 S.Ct. 2061 (2002) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367 (1993), these acts "collectively constitute one 'unlawful employment practice.'" *Id*., at 117.  As long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by the court for the purposes of determining liability." *Id*.  A plaintiff must demonstrate that "separate acts"- the timely and

**SECOND ORDER RE EVANS FRUIT CO.,**
**INC.'S MOTION FOR SUMMARY JUDGMENT- 4**

untimely acts- are sufficiently related and continuing, with no intervening acts
to sever the alleged harassment.  *Stewart v. Miss. Transp. Comm'n*, 586 F.3d
321, 328 (5th Cir. 2009).  In making such a determination, courts consider
whether the allegations involve "the same type of employment actions, occurred
relatively frequently, were perpetrated by the same managers" and were not
"isolated, sporadic or discrete."  *Story v. Napolitano*, 771 F.Supp.2d 1234, 1249
(E.D. Wash. 2011).  The court must decide whether all of the time-barred
allegations are sufficiently related to the "anchor" event.  *Id*. at 1249.

The continuing violation doctrine is also tempered by the court's
equitable powers.  Employers are not left defenseless against employees who
bring hostile work environment claims extending over long periods of time and
have recourse  when a plaintiff unreasonably delays filing a charge.  *Morgan*,
536 U.S. at 120, The filing period is not a jurisdictional prerequisite to filing a
Title VII suit, but is a requirement subject to waiver, estoppel, and equitable
tolling "when equity so requires."  *Id*., quoting *Zipes v. Trans World Airlines,
Inc.*, 455 U.S. 385, 398, 102 S.Ct. 1127 (1982).  These equitable doctrines allow
Title VII's remedial purpose to be honored "without negating the particular
purpose of the filing requirement, to give prompt notice to the employer."  *Id*.,
quoting *Zipes*, 455 U.S. at 398.  Laches is an equitable doctrine which acts as a
bar to a claim on the "ground of unexcused or unreasonable prejudicial delay."
*EEOC v. Alioto Fish Co.*, 623 F.2d 86, 88 (9th Cir. 1980).

### 2. Hostile Work Environment

As to each charging party and class member, it is necessary for the EEOC
to prove the employee was subjected to verbal or physical conduct of a sexual
nature, that the conduct was unwelcome, and that the conduct was sufficiently

**SECOND ORDER RE EVANS FRUIT CO.,
INC.'S MOTION FOR SUMMARY JUDGMENT- 5**

severe or pervasive to alter the terms and conditions of her employment and create an abusive work environment. *EEOC v. California Psychiatric Transitions, Inc.*, 644 F.Supp.2d 1249, 1274 (E.D. Cal. 2009), citing *Rene v. MGM Grand Hotel, Inc.* 305 F.3d 1061, 1065 (9th Cir. 2002)(en banc). The work environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275 (1998). Whether the conduct is severe or pervasive is determined by reference to the following factors: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *California Psychiatric Transitions, Inc.*, 644 F.Supp.2d at 1274, quoting *Kortan v. California Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000). The required showing of severity of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct. *Id.*, citing *Ellison v.Brady*, 924 F.2d 872, 878 (9th Cir. 1991). The offensive conduct need not, however, be both severe and pervasive. It need be only severe or pervasive. *Id.* at n. 20.[3]

In a previous order (ECF No. 264), this court indicated it would follow the lead of the Eastern District of California in *California Psychiatric Transitions, Inc.*, 644 F.Supp.2d at 1275-76, to allow a complaining employee, who has been personally subject to sexual harassment, to introduce evidence of the harasser's alleged sexual misconduct toward other employees of which she

---

[3]The WLAD "substantially parallels Title VII." *Estevez v. Faculty Club of Univ. of Wash.*, 129 Wn.App. 774, 793, 120 P.2d 579 (2005).

**SECOND ORDER RE EVANS FRUIT CO., INC.'S MOTION FOR SUMMARY JUDGMENT- 6**

became aware during her employment, even if the other alleged acts occurred outside the complaining employee's presence.  The Eastern District of California court relied on authority from the Sixth Circuit, *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 335 (6th Cir. 2008), in adopting this totality of circumstances approach.[4]  There are limitations on this approach, however, which the Sixth Circuit more recently enunciated in *Berryman v. Supervalu Holdings, Inc.*, 669 F.3d 714, 718 (6th Cir. 2012).  The totality of circumstances approach "does not stand for the proposition that a group of plaintiffs may aggregate all of their claims regardless of whether they were aware of one another's experiences or not."  *Id*.  To the contrary, "[i]mplicit in the consideration of the totality of the circumstances is that a plaintiff was aware of the harassment that was allegedly directed toward other employees."  *Id*.

Here, absent admissible evidence that a particular charging party or class member was actually aware of alleged sexual misconduct directed at another charging party or class member, or at any other female employee, the court will not consider the other alleged misconduct in evaluating the particular charging party's or class member's claim.  The court will not assume that a charging party or class member was aware of alleged misconduct directed at others.  And of course, a charging party or class member must have personally been subject to sexual harassment for her credible awareness of harassment directed at another female employee to have any relevance.  Rumors and hearsay swirling

_____

[4]The Ninth Circuit has suggested such awareness of other alleged misconduct is relevant.  *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000).

**SECOND ORDER RE EVANS FRUIT CO.,
INC.'S MOTION FOR SUMMARY JUDGMENT- 7**

through the workplace, without any connection whatsoever to a particular claimant, are insufficient.

Here, EEOC attempts to improperly "aggregate" the claims of all the charging parties and class members based on unsubstantiated rumors, hearsay, and otherwise irrelevant information (i.e., Sunnyside Ranch foreman Juan Marin allegedly being responsible for murder; Marin allegedly providing drugs to workers; alleged male on male sexual harassment in the workplace), and regardless of whether charging parties and class members were aware of each other's personal experiences.   As set forth below, the court has found that certain claims survive summary judgment, but only on the basis of the specific admissible evidence identified by the court and without regard to the overly broad "totality of the circumstances" approach advocated by EEOC.  Any "totality of the circumstances" approach does not salvage claims which cannot survive summary judgment because there is insufficient evidence to show the claimant was personally and directly subject to sexual harassment.

### 3.  Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.  *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975).  Under Fed. R. Civ. P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985).  Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law.  *Anderson*, 477 U.S. at 248.

**SECOND ORDER RE EVANS FRUIT CO.,**
**INC.'S MOTION FOR SUMMARY JUDGMENT- 8**

The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587. Nonetheless, summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23.

### 4. Individual Claimants

### a. Wendy Granados

Having reviewed the excerpts of the deposition testimony of Ms. Granados supplied by the parties, the court concludes there is a genuine issue of material fact whether she was subject to a sexually hostile work environment created by Juan Marin. Her testimony which creates this issue of material fact includes: (1) Marin would greet her every time she went to use the portable toilets by squeezing her hand and looking at her in a manner that made her feel like he was undressing her; (2) she overheard a conversation between Marin and his brother in which Marin allegedly instructed his brother to "fuck her;" and (3) her witnessing of Marin's overtures to another woman, "Nena."

**SECOND ORDER RE EVANS FRUIT CO.,**
**INC.'S MOTION FOR SUMMARY JUDGMENT- 9**

1    Ms. Granados worked at Evans Fruit from July 2004 to October 2004,

2  from June 2005 through October 18, 2005, and from September 2, 2006 until

3  November 6, 2006.  Alleged incidents occurring prior to October 22, 2005 will

4  be considered timely under the continuing violation doctrine because the same

5  alleged perpetrator (Marin) was involved in each of the incidents, the incidents

6  are not too far apart from each other in time, and the "untimely" incidents, those

7  occurring prior to the October 22, 2005 deadline, occurred within a matter of a

8  few weeks to a few months prior to said deadline.

9

10    **b.  Maria Carmen Zaragoza**

11    Having reviewed the excerpts of the deposition testimony of Ms.

12  Zaragoza provided by the parties, the court concludes there is no genuine issue

13  of material fact precluding the court from finding as a matter of law that Ms.

14  Zaragoza was not subjected to a sexually hostile work environment created by

15  Juan Marin.

16    To the extent Ms. Zaragoza is even asserting a sexual harassment claim, it

17  is based largely on inadmissible hearsay testimony regarding what she was told

18  by her husband and her two sisters regarding Marin.  Furthermore, Ms.

19  Zaragoza worked at Evans Fruit for only six weeks in 2005 and therefore, she

20  was no longer there when her sisters (including class member Sylvia Isquierdo)

21  were allegedly harassed.  Marin's alleged offer to Ms. Zaragoza, when she was

22  pregnant, to buy her baby if it was a boy, does not constitute sexual harassment

23  and particularly so since it is not accompanied by any other evidence of sexual

24  harassment directed at Ms. Zaragoza.  Ms. Zaragoza testified she, herself, was

25  not sexually harassed and that Marin, and no one else at Evans Fruit, said

26  anything inappropriate to her or touched her inappropriately.  She did not hear

27  **SECOND ORDER RE EVANS FRUIT CO.,**

28  **INC.'S MOTION FOR SUMMARY JUDGMENT- 10**

Marin say anything inappropriate to or about any other women while she was working at Evans Fruit. She testified she is not claiming to have suffered any emotional distress.

Ms. Zaragoza testified she was compelled sometime in 2006 to type up letters for Marin regarding his alleged good character and that as recently as 2011, she met Marin in a store and he told her that if anybody asked her about the captioned lawsuit, she should say he had not harassed anyone. These incidents obviously occurred while Ms. Zaragoza was no longer employed at Evans Fruit. For that reason alone, they do not constitute sexual harassment for which Evans Fruit can be held responsible.

Because Ms. Zaragoza was not subjected to sexual harassment, timeliness of her claim is not an issue.


### c. Magdalena Alvarez

Ms. Alvarez worked for Evans Fruit for three months during 2001 and returned to work there in 2007 for two months. She alleges she was sexually harassed by an unidentified crew leader in 2001, and then by Juan Marin in 2007.

The court finds the incident alleged to have occurred in 2001 is not actionable under the continuing violation doctrine. It is not sufficiently related to the incident (the "anchor" event) which allegedly occurred in 2007. The alleged perpetrators in each incident are different. Furthermore, there is a six year gap between the two incidents, making the 2001 incident "isolated, sporadic or discrete." The gap in Ms. Alvarez's employment with Evans Fruit is an intervening act which severs the alleged harassment which occurred in 2001 from the alleged harassment in 2007. The court notes that in its memorandum

**SECOND ORDER RE EVANS FRUIT CO.,**
**INC.'S MOTION FOR SUMMARY JUDGMENT- 11**

filed in opposition to Evans Fruit's motion for summary judgment, the EEOC did not offer any argument as to why the alleged 2001 incident should be considered actionable under the continuing violation doctrine. The doctrine of laches also precludes the alleged 2001 incident from being actionable. The alleged incident occurred 11 years ago and this amounts to "unreasonable prejudicial delay" in light of the fact that the limitations deadline is October 22, 2005.

Evans Fruit concedes there is a genuine issue of material fact with regard to the alleged 2007 incident involving Marin and therefore, this portion of Ms. Alvarez's claim will proceed to trial. The court will not allow evidence of the alleged 2001 incident to be introduced in support of the claim regarding the alleged 2007 incident because the probative value of such evidence is outweighed by its danger of unfair prejudice. A limiting instruction to the jury that the 2001 incident is not actionable would be insufficient. Essentially, the same reasons for deeming the 2001 incident non-actionable justify precluding evidence of the same to be introduced in support of the 2007 incident.

### d. Eufrocina Hernandez

The alleged attempted rape of Ms. Hernandez by Juan Marin in 1995 or 1996 or 1997 is not actionable because it is untimely. It is not saved by the continuing violation doctrine because it occurred approximately eight or more years before October 22, 2005, and it is distinct from the type of harassment alleged by Ms. Hernandez after October 22, 2005. Furthermore, the doctrine of laches bars consideration of the attempted rape.

The alleged harassment which occurred after October 22, 2005 includes sexual comments made to Ms. Hernandez by Marin concerning other women,

**SECOND ORDER RE EVANS FRUIT CO.,**
**INC.'S MOTION FOR SUMMARY JUDGMENT- 12**

including unidentified women in the workplace.  It also includes the alleged sexual assault of another woman (Norma Valdez) purportedly witnessed by Ms. Hernandez, although Ms. Valdez has not made such an allegation.  These alleged comments and conduct do not constitute sexual harassment of Ms. Hernandez.  It is alleged speech and conduct directed at others.  Because the 1995 or 1996 or 1997 alleged attempted rape of Ms. Hernandez is not actionable, what is left with regard to her claim is alleged misconduct directed at others and this "second-hand" harassment is insufficient to raise a genuine issue of material fact that Ms. Hernandez was subjected to a sexually hostile work environment.

Furthermore, the record bears out that the alleged misconduct directed at others did not alter the terms and conditions of Ms. Hernandez's employment. Ms. Hernandez testified that she never passed on Marin's comments to the women about whom the comments had been made.  And, at some point, prior to 2009, Ms. Hernandez felt no restraint in complaining about not being fully compensated for the number of hours she had worked while other female employees allegedly were being compensated for hours they had not worked. Ms. Hernandez testified her complaints caused Marin to no longer trust her and therefore, to no longer talk to her about other women in the workplace.  In sum, there was no unreasonable interference with Ms. Hernandez's work performance.

**e.  Norma Valdez**

During her deposition, Ms. Valdez did not testify that Juan Marin made any harassing comments to her and/or that he ever sexually assaulted her.  Her testimony is only that unidentified others told her that Marin claimed to have

**SECOND ORDER RE EVANS FRUIT CO.,**
**INC.'S MOTION FOR SUMMARY JUDGMENT- 13**

had sex with her and fathered one of her children.  EEOC relies on the testimony of others, primarily Eufrocina Hernandez, to support the claim that Ms. Valdez was raped by Marin and that he made sexually harassing comments to her.  Ms. Valdez does not corroborate any of Ms. Hernandez's testimony.  Ms. Hernandez's hearsay testimony is insufficient to create a genuine issue of material fact that Ms. Valdez was subjected to a sexually hostile work environment.

### f.  Angela Mendoza

During her deposition, Ms. Mendoza acknowledged that she was not claiming that Juan Marin ever touched her in a sexual manner or made any sexually inappropriate remarks to her.  Rather, she acknowledged that her claim of sexual harassment was based on Marin's alleged conduct toward her daughter (Jacqueline Abundez).

Ms. Mendoza claims that an individual named "El Burro" spoke to other persons about having raped her underneath the apple trees and that she heard of this through these other unidentified persons.   EEOC offers deposition testimony from Alberto Sanchez, a crew leader at Evans Fruit at the relevant time, that Ms. Mendoza complained to him that an individual named Aron Farias was sexually harassing her, although she did not provide any details.  Ms. Mendoza, herself, did not testify about being harassed by Farias.  Even were it not inadmissible hearsay, this evidence is insufficient to create a genuine issue of material fact that Ms. Mendoza was subjected to a sexually hostile work environment.

///

///

**SECOND ORDER RE EVANS FRUIT CO.,
INC.'S MOTION FOR SUMMARY JUDGMENT- 14**

**g.  Jacqueline Abundez**

Ms. Abundez has been deceased since July 2008.  The charge she filed on August 18, 2006 asserted only very generally that she was subjected to "unwelcome sexual comments and advances by Juan Marin."  As such, the EEOC relies on the testimony of Ms. Abundez's mother, Angela Mendoza, to support Ms. Abundez's claim.  In her charge, Ms. Abundez did not claim she had been touched by Marin, contrary to the testimony by her mother.  In any event, the incident allegedly witnessed by Ms. Mendoza consists of a single incident in which Marin "grab[bed]" Ms. Abundez "by the shoulders and snuggle up against her."  EEOC asserts that "[o]ver Ms. Mendoza's vehement protests, [Marin] separated Jacqueline from her mother and was observed by numerous witnesses pinning Jacqueline against a tree and telling her that she was old enough to take his penis."  None of these witnesses are identified and the assertion is based wholly on hearsay.

There is insufficient evidence to create a genuine issue of material fact that Ms. Abundez was subjected to a work environment that was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."

**h.  Dolores Sagal**

During her deposition, Ms. Sagal acknowledged that she was not claiming that anyone had ever said anything inappropriate to her or had touched her inappropriately.  She testified that "I have never claimed that I have been sexually harassed . . . [b]ut I saw who was sexually harassed."  Nevertheless, EEOC asserts Ms. Sagal was sexually harassed as a result of hearing Juan Marin make comments to her about certain other women that they had nice bodies and

**SECOND ORDER RE EVANS FRUIT CO.,
INC.'S MOTION FOR SUMMARY JUDGMENT- 15**

were "hot," and because on one occasion he offered to buy Ms. Sagal's baby.

By her own admission, Ms. Sagal was not sexually harassed and the evidence presented by the EEOC regarding alleged "second-hand" harassment is insufficient to create a genuine issue of material fact that Ms. Sagal was subjected to a sexually hostile work environment, either objectively or subjectively.

### i. Sylvia Isquierdo

Ms. Isquierdo testified that when she was first employed at Evans Fruit in 2007, Juan Marin would tell her she was "pretty." She testified that this offended her. By itself, this does not constitute actionable sexual harassment. As discussed *infra*, however, this was not an isolated occurrence and was the beginning of what Ms. Isquierdo perceived to be improper overtures to her by Marin.

Ms. Isquierdo testified that also in 2007, Marin told her on one occasion that she should give him her son, and on another occasion told the same to her husband, Trinidad. This does not constitute actionable sexual harassment as revealed by the alleged request being made to both the father and the mother. Ms. Isquierdo testifies that during 2008, she saw a crew leader, "Camello" (aka Alberto Sanchez), kissing two or three different girls. There is no evidence suggesting this was being done against anyone's will and it does not constitute sexual harassment as to Ms. Isquierdo.

Ms. Isquierdo returned to work at Evans Fruit in 2009, this time in the office at the Sunnyside Ranch. According to her, Marin "would always touch my shoulder, always my left shoulder, and say how pretty I looked and I'm doing a very good job." According to her, he would do this every day when she

**SECOND ORDER RE EVANS FRUIT CO.,
INC.'S MOTION FOR SUMMARY JUDGMENT- 16**

was in the office and that he would come into the office two to three times a day.   Ms. Isquierdo testified that on one occasion, she was with Marin in his truck and he told her how pretty she was and then asked to look at her ring, after which "he grabbed my hand and he started, like touching it up, and I jumped out of the truck and I told him, I'm going to call my stepdad, Isidro."  Ms. Isquierdo testified that on another occasion in 2009, Marin stated to her that "we could go to Yakima and for nobody could see us, he'll buy me a Lamborghini, and he liked girls under 18 only."

Based on the totality of the alleged interaction between Ms. Isquierdo and Marin, the court concludes there is a genuine issue of material fact whether Ms. Isquierdo was subjected to a work environment that was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  The frequency or pervasiveness of the alleged misconduct by Marin diminishes the requisite severity of the same necessary to create a genuine issue of material fact.

**j. Jennifer Ruiz**

Ms. Ruiz worked for Evans Fruit for a total of two weeks in June 2007 thinning apples.

The response by a crew leader named "Marcelo" that Ms. Ruiz would have to do "something special" in order to be hired as a checker after the thinning season was over does not constitute actionable sexual harassment.  Ms. Ruiz admitted she did not know what "Marcelo" meant and did not ask him for clarification.

The statements made by crew leader "Camello" to Ms. Ruiz that she was "pretty" and had "pretty eyes" do not, in isolation, constitute actionable sexual

**SECOND ORDER RE EVANS FRUIT CO.,**
**INC.'S MOTION FOR SUMMARY JUDGMENT- 17**

harassment.  Ms. Ruiz worked only one week with "Camello's" crew.

Ms. Ruiz testified that during the week she was with "Camello's" crew, Juan Marin would come around in his truck and would call her over to the truck, ask if anyone was bothering her, and tell her she was "pretty" and had "pretty eyes," and that she should come and work in the office with him.  According to Ms. Ruiz, Marin checked in on her maybe twice a day.  Ms. Ruiz testified that on one occasion, Marin asked her to fill out some paperwork and to do so, she got into his truck and while she was there and Marin was driving, he made the same aforementioned comments.  Ruiz testified she was in the truck only about two or three minutes.

Ms. Ruiz says these comments made her "uncomfortable," and there is no reason to doubt that subjectively, she felt that way.  The comments by "Camello" and Marin, however, alone or in combination, simply do not rise to the level that a reasonable person would find hostile or abusive, particularly so since they occurred over the course of only one week.

Ms. Ruiz's allegations are distinguishable from those made by Ms. Isquierdo which the court finds are sufficient to create a genuine issue of material fact whether Ms. Isquierdo was subjected to a hostile work environment.  Taken together, the allegations made by Ms. Isquierdo, including an incident of touching, over a lengthier period of time, suggest enough severity and/or pervasiveness of speech and conduct directed at her that a jury could find she was subjected to a hostile work environment.

**k.  Diana Barajas**

Ms. Barajas testified that during the 2011 apple harvest, her "crew boss," "El Huatches" (aka Alberto Saldivar), would tell her she was pretty and that he

**SECOND ORDER RE EVANS FRUIT CO.,**
**INC.'S MOTION FOR SUMMARY JUDGMENT- 18**

wanted to have sex with her. He allegedly told her this every time he saw her, which was daily, and that he told her this more than once a day. Ms. Barajas also testified that "El Huatches" made sexual comments to her about other women and sent pictures to her of himself, one in which he was shirtless, asking if she desired his body and asking if she had any pictures she could send him. This is sufficient to create a genuine issue of material fact that Ms. Barajas was subjected to a sexually hostile work environment.

As discussed in a separate order, there is also an issue of material fact whether Saldivar, as a "crew boss," had sufficient authority over Ms. Barajas such that his conduct gives rise to vicarious liability on the part of Evans Fruit. Saldivar testified during his deposition that in 2011, he did have authority to fire employees.

Ms. Barajas provided a signature acknowledging receipt of Evans Fruit's sexual harassment policy, although she does not remember receiving the policy. Naul Arellano was Saldivar's supervisor. Ms. Barajas testified that when Mr. Arellano was approaching, Saldivar would discontinue talking to her "I think because he thought he'd be scolded." She testified she thought Mr. Arellano would have told Saldivar to not be "disrespectful" had he heard Saldivar's comments to Ms. Barajas. Although she knew Mr. Arellano was Saldivar's boss, Ms. Barajas never spoke to Mr. Arellano about Saldivar. According to Ms. Barajas, it simply did not "cross [her] mind" to tell Mr. Arellano. Ms. Barajas testified that Mr. Arellano was mean because he would yell at the employees and did not treat her very nicely. On one occasion, Ms. Barajas received a disciplinary notice from Mr. Arellano for failing to report to work. Ms. Barajas acknowledges receiving a copy of the preliminary injunction issued in the captioned matter in October 2010, but does not know when, and does not

**SECOND ORDER RE EVANS FRUIT CO.,**
**INC.'S MOTION FOR SUMMARY JUDGMENT- 19**

1  believe she ever read it.  Ms. Barajas testified it was her understanding that
2  Saldivar was eventually terminated by Mr. Arellano for the sexual harassment
3  of another female employee.

4      This evidence may well persuade a jury that Evans Fruit is not liable to
5  Ms. Barajas because she "could have avoided harm." *Faragher v. City of Boca*
6  *Raton*, 524 U.S. 775, 807 (1998).  Based on this record, however, the court is
7  unwilling to find as a matter of law that at the time of the alleged harassment of
8  Ms. Barajas, Evans Fruit had "provided a proven, effective mechanism for
9  reporting and resolving complaints of sexual harassment" and that Ms. Barajas
10 "unreasonably failed to avail herself of the employer's preventive or remedial
11 apparatus." *Id*. at 806-07.

12

13      **l.  Alida Miranda**

14      At her deposition, Ms. Miranda testified that one of her crew leaders, a
15 man named Simon, told her that if she wanted to work piece rate or as a checker,
16 that she would need to have sex with him.  Ms. Miranda testified that when she
17 informed Juan Marin of this, he offered her a position on a different crew, but
18 also responded that "[m]y roosters are loose, the chickens they should let
19 themselves."

20      Marin's alleged comment can reasonably be interpreted as suggesting  he
21 did not care if Ms. Miranda and other female employees were being sexually
22 harassed.  Based on this record, there is a genuine issue of material fact whether
23 Ms. Miranda was subjected to a sexually hostile work environment.  As
24 discussed in a separate order, there is a genuine issue of material fact regarding
25 whether Evans Fruit crew leaders were supervisors such that Evans Fruit can be
26 held vicariously liable for sexual harassing conduct on their part.  Furthermore,

27  **SECOND ORDER RE EVANS FRUIT CO.,**
28  **INC.'S MOTION FOR SUMMARY JUDGMENT- 20**

1  as discussed in that order, even if crew leaders were mere co-workers, Marin's
2  particular status allows his knowledge of alleged acts of sexual harassment by
3  crew leads to be imputed to Evans Fruit so as to render Evans Fruit liable for
4  said harassment if Evans Fruit did not take adequate steps to address the same.

5
6     **m. Lidia Sierra Bravo**

7        Ms. Bravo testified that during the 2007 thinning season, a crew leader,
8  Simon Ramirez, would ogle her backside, and that during the 2008 season, he
9  did so again and also tried to hold her hand.  Ms. Bravo testified that during
10 2008, Ramirez "propositioned" her in that invited her out to lunch.  While the
11 Defendant suggests this was wholly innocent, a jury could find that it was a
12 sexual proposition since Ms. Bravo was a married woman and Simon Ramirez
13 knew she was married and knew her husband, and according to Ms. Bravo, told
14 her that her husband did not need to know if she went out with him for "lunch."
15 According to Ms. Bravo, Ramirez indicated to her that if she accepted his offer,
16 she would get paid even though she would be away from work having "lunch"
17 with him.  Ms. Bravo further testified that she subsequently had a conversation
18 with Juan Marin who stated she should "accept" Ramirez's offer and that her
19 husband would not find out, and that if she declined, she would "face the
20 consequences."

21       There is sufficient evidence to create a genuine issue of material fact
22 whether Ms. Bravo was subjected to a sexually hostile work environment for
23 which Defendant is potentially vicariously liable due to the alleged conduct
24 and/or statements of Ramirez and/or Marin.  Any damages proximately caused
25 by the alleged conduct and/or statements is a question for the jury, if liability is
26 found.

27 **SECOND ORDER RE EVANS FRUIT CO.,**
28 **INC.'S MOTION FOR SUMMARY JUDGMENT- 21**

1

### n. Veronica Reyna

Ms. Reyna testified during her deposition that on the first day she started working at Evans Fruit in 2010, Juan Marin came up to her and told her he did not like girls that plucked out their eyebrows, or painted their hair, or had piercings, or had breast implants "because they felt cold."  Thereafter, according to Ms. Reyna, she was asked by "Huatches" (aka "El Huatches" aka Alberto Saldivar) whether she had a C-section, to which she responded "yes," and to which he replied that he wanted "to know what it felt like to have sex with me having my C-section, that maybe it felt like I was still a virgin . . . ."  According to Mrs. Reyna, he then started laughing and walked away.  Ms. Reyna testified that three days later, she overheard Saldivar tell another woman that he wanted to have sex with her (Ms. Reyna).  Ms. Reyna testified that on another occasion, Saldivar was standing in back of her, staring at her, and told her she "looked good."

Taken together, this evidence is sufficient to create a genuine issue of material fact whether Ms. Reyna was subjected to sufficiently severe or pervasive sexual conduct that created a hostile work environment for her.  Although it appears Ms. Reyna may not have complained to Naul Arellano about Saldivar's conduct which was specifically directed at her, she testified that she did complain in general about Saldivar's flirting with other women which she says, Arellano dismissed as Saldivar's "personal business."  Evans Fruit's *Ellerth-Faragher* defense is preserved as to Ms. Reyna (and all claimants who survive summary judgment) and can be presented to the jury if the evidence so warrants.  The court will not, however, find as a matter of law based on the present record that this defense precludes liability as to Ms. Reyna.

**SECOND ORDER RE EVANS FRUIT CO.,**
**INC.'S MOTION FOR SUMMARY JUDGMENT- 22**

### o. Vanessa Aviles

Ms. Aviles is the sister of Ms. Reyna.  During her deposition, she testified that she was with her sister at the time Marin made his comments (i.e., regarding breast implants) and that those comments were also directed at her.

These one-time comments, by themselves, are insufficient to create a genuine issue of material fact that Ms. Aviles was subjected to a sexually hostile work environment.  Even when Aviles's other non-hearsay testimony is considered along with the comments made by Marin, it does not create an issue of material fact that she was subjected to severe or pervasive verbal or physical conduct of a sexual nature.  This other testimony includes: 1) that an individual named Becerra told another individual Pantero to ask her out; 2) that Becerra would frequently pair her up with different male workers; 3) that one of these male workers, Rafael, asked her to go to a dance, tried to hold her hand, and on one occasion, tried to hug her; 4) various crew leaders would stand behind her and stare at her, but she was not sure how often; and 5) "Huatches" one time told her he would let her slap him if she let him spank her with a tree branch.

### p. Esmeralda Aviles

The record does not establish that Ms. Esmeralda Aviles was present and/or heard the "breast implant" comments made by Marin.  During her deposition, she testified that as with her sister, Vanessa, "Huatches" told her on one occasion that if she would let him smack her in the butt with a branch, he would let her slap him.  She also testified that on one occasion, "Huatches" asked her for a "full body picture," which she construed to mean a photo of her in the nude.  She also testified that she had "awkward" conversations with a co-worker named Fausto who made her "uncomfortable" because he talked about

**SECOND ORDER RE EVANS FRUIT CO.,
INC.'S MOTION FOR SUMMARY JUDGMENT- 23**

his secret girlfriend, although he did not offer any sexual descriptions.  She further testified that on three occasions, an unidentified co-worker would try to climb up her ladder to reach her, would touch her leg, tell her he liked her and wanted to know if she would go out with him, but she would "kick him off." She complained to one of the crew leaders (Becerra) about this and she was given a new working partner.

Even considered in its totality, this evidence is insufficient to create a genuine issue of material fact that Ms. Esmeralda Aviles was subjected to verbal or physical conduct of a severe or pervasive nature such as to constitute a sexually hostile work environment.

### q. Elodia Sanchez

Defendant Evans Fruit contends the record shows that Ms. Sanchez has no damages attributable to alleged sexual harassment by Juan Marin and therefore, her Washington Law Against Discrimination (WLAD) claims, common law claims for negligent hiring and supervision, and her Title VII claims against Evans Fruit fail as a matter of law.

Defendant too narrowly construes the excerpts of the deposition testimony of Ms. Sanchez upon which it relies in asserting that "her emotional distress is fully attributable to Juan Marin's alleged retaliatory conduct toward Ms. Sanchez's boyfriend, Gregorio Aguila after they left Evans Fruit, and is not based on sexual harassment."  It can be reasonably inferred from her deposition testimony (the excerpts presented by Defendant and the excerpts presented by the EEOC) that Ms. Sanchez is also attributing her emotional distress to alleged sexual harassment by Marin and indeed, when asked point blank whether she was claiming damages for "how you feel or felt about sexual harassment," Ms.

**SECOND ORDER RE EVANS FRUIT CO.,
INC.'S MOTION FOR SUMMARY JUDGMENT- 24**

1   Sanchez responded "yes" and then went on to describe the manifestations of

2   said distress (i.e, bad headaches and bumps on the head).  If liability for sexual

3   harassment is established under Title VII and/or the WLAD and/or common

4   law, a jury will determine the extent of Ms. Sanchez's damages for the same.

5

6       **C.  CONCLUSION**

7       The balance of Defendant Evans Fruit's Motion For Summary Judgment

8   (ECF No. 568) is **GRANTED in part** and **DENIED in part**.

9       Wendy Revoloreo (aka Roboloreo), Maria Ines Vargas Herrera, and

10  Leonor Hernandez are **DISMISSED** as EEOC class members.  If Adela Lopez

11  has also been named as an EEOC class member, she too is **DISMISSED**.  The

12  sexual harassment claims of these individuals will not be heard as part of the

13  captioned litigation.

14      Defendant Evans Fruit's Motion For Summary Judgment is **GRANTED**

15  to the extent it is awarded judgment on the sexual harassment claims asserted by

16  EEOC charging parties Angela Mendoza and Jacqueline Abundez, and on the

17  sexual harassment claims asserted by EEOC class members Maria Carmen

18  Zaragoza, Eufrocina Hernandez, Magdalena Alvarez as to the alleged 2001

19  conduct, Norma Valdez, Dolores Sagal, Jennifer Ruiz, Vanessa Aviles and

20  Esmeralda Aviles.

21      Defendant Evans Fruit's Motion For Summary Judgment is **DENIED**

22  with regard to the sexual harassment claims of charging party Wendy Granados

23  and class members Sylvia Isquierdo, Diana Barajas, Alida Miranda, Elodia

24  Sanchez, Lidia Sierra Bravo and Veronica Reyna.  Their claims against Evans

25  Fruit will proceed to trial, as will the claims of Carina Miranda Gutierrez,

26  ///

27  **SECOND ORDER RE EVANS FRUIT CO.,**

28  **INC.'S MOTION FOR SUMMARY JUDGMENT- 25**

1  Cecilia Lua, Danelia Barajas, Esther Abarca, Aurelia Garcia and Magdalena

2  Alvarez as to the alleged 2007 conduct.

3      **IT IS SO ORDERED.**  The District Court Executive is directed to enter

4  this order and to provide copies to counsel.

5      **DATED** this   27th   day of November, 2012.

6

7                    ***s/Lonny R. Suko***
                    _____
8                         LONNY R. SUKO
                         U. S. District Court Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  **SECOND ORDER RE EVANS FRUIT CO.,**
28  **INC.'S MOTION FOR SUMMARY JUDGMENT- 26**