1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

               Plaintiff,

and


ELODIA SANCHEZ, et al.,

     Plaintiffs-Intervenors,

    v.

EVANS FRUIT CO., INC.

          Defendant,

and

JUAN MARIN and ANGELITA
MARIN, a marital community,

     Defendants-Intervenors.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

NO.  CV-10-3033-LRS

**ORDER RE PLAINTIFFS'
MOTION FOR PARTIAL
SUMMARY JUDGMENT**

     **BEFORE THE COURT** is the Motion For Partial Summary Judgment (ECF No. 559) filed jointly by Plaintiff EEOC and Plaintiffs-Intervenors.  This motion was heard with oral argument on May 17, 2012.

     Plaintiffs ask the court to find as a matter of law that: 1) Juan Marin was a "manager" for Evans Fruit Co., Inc., under the Washington Law Against Discrimination (WLAD), RCW 49.60; 2) Juan Marin was a "supervisor" for

**ORDER RE PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT- 1**

Evans Fruit Co., Inc., pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ; and 3) "crew leaders" at Evans Fruit's Sunnyside Ranch during the relevant times were also "supervisors" under Title VII. These determinations relate to whether and how liability can be imputed to Evans Fruit as the employer of Marin and the crew leaders. They also relate to the availability of the *Ellerth-Faragher* defense to Evans Fruit. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08, 118 S.Ct. 2275 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257 (1998).

**I.  APPLICABLE LAW**

      **A.  Liability Under The WLAD**

      **1.  Automatic Liability For Acts of Manager**

Under the WLAD, liability is automatically imputed to the employer if an "owner, manager, partner or corporate officer personally participate[d] in the harassment." *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 693 P.2d 708, 712 (1985). Courts do not apply automatic employer liability just because an impugned employee has the term "manager" in his/her job title or is referred to as a "manager" in the workplace. *Francom v. Costco Wholesale Corp.*, 98 Wn.App. 845, 854, 991 P.2d 1182 (2000). The prevailing law in the State of Washington is that for a "manager's" conduct to automatically impute liability to the employer, the manager has to occupy a sufficiently high level position so as to be considered the alter ego of the employer. *Francom*, 98 Wn.App. at 856 (mid-level manager at Costco was not the alter ego of Costco); *Washington v. Boeing Co.*, 105 Wn.App. 1, 11, 19 P.3d 1041 (2000)(flight line managers not the alter ego of Boeing).

In *Robel v. Roundup Corporation*, 148 Wn.2d 35, 48 n. 5, 59 P.3d 611

**ORDER RE PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT- 2**

1   (2002), the Washington Supreme Court defined "managers" as "those who have

2   been given by the employer the authority and power to affect the hours, wages,

3   and working conditions of the employer's workers."  It is true that in *Robel*, the

4   state supreme court did not undertake an analysis of whether the management

5   employees at issue qualified as "managers" under the WLAD for the purpose of

6   imputing liability to the employer.  This was  because the employer, Fred

7   Meyer, "failed to assign error to the trial court's findings that management-level

8   employees participated in the harassment."  *Id*.  It is also true, however, that

9   *Robel's* definition of "manager" has been turned into a Washington Pattern Jury

10  Instruction (WPI 330.24).

11

12      **2.  Liability For Acts of Non-Alter Ego Supervisors and Co-Workers**

13          It appears that under the WLAD, no Washington case has held

14  harassment by supervisors who are not alter egos of the employer results in

15  presumptive vicarious liability for the employer.  Consistent therewith, no

16  Washington case has specifically applied the *Ellerth-Faragher* affirmative

17  defense to a situation involving a supervisor who is not the alter ego of the

18  employer.  Under the WLAD, it appears non-alter ego supervisors are treated

19  like co-workers in that the employer's liability cannot be derivative (not

20  vicarious), but can only be direct (due to its own negligence) if it (1) authorized,

21  knew, or should have known of the harassment and (2) failed to take reasonably

22  prompt and adequate corrective action.  *Glasgow*, 103 Wn.2d at 407.

23

24      **B.  Liability Under Title VII**

25      **1.  Automatic Liability**

26          Title VII is consistent with WLAD in that liability automatically applies

27  **ORDER RE PLAINTIFFS' MOTION**

28  **FOR PARTIAL SUMMARY JUDGMENT- 3**

1  when the harassing supervisor is "indisputably within that class of an employer

2  organization's officials who may be treated as the organization's proxy."

3  *Faragher*, 524 U.S. at 789.  The following officials may be treated as an

4  employer's proxy:  a president, owner, proprietor, partner, corporate officer, or

5  supervisor "hold[ing] a sufficiently high position in the management hierarchy

6  of the company for his actions to be imputed automatically to the employer."

7  *Id*. at 789-90.  In *Johnson v. West*, 218 F.3d 725 (7th Cir. 2000), the plaintiff

8  alleged the "Chief of Police" of a Veterans Administration (VA) hospital was

9  such a person.  The Seventh Circuit disagreed, noting that although the alleged

10 harasser had an important title, he had no less than two supervisors within the

11 hospital and no doubt others within the VA's bureaucracy.  Therefore, he was

12 not a high level manager whose actions spoke for the VA.

13       When the harassing supervisor is "indisputably within that class of an

14 employer organization's officials who may be treated as the organization's

15 proxy," the *Ellerth-Faragher* affirmative defense does not apply.  Liability is

16 automatic and it is not subject to any affirmative defense.

17       Under Title VII, the other circumstance in which liability automatically

18 applies is "when the supervisor's harassment culminates in a tangible

19 employment action, such as discharge, demotion, or undesirable reassignment."

20 *Faragher*, 524 U.S. at 808.  In the case at bar, it appears there is no allegation

21 that any of the claimants  were the subject of a "tangible employment action" as

22 a result of alleged harassment by a supervisor.  Consequently, the *Ellerth-*

23 *Faragher* affirmative defense is available to Evans Fruit with regard to

24 harassment by any supervisor who was not operating as a "proxy" of the

25 company.

26

27 **ORDER RE PLAINTIFFS' MOTION**

28 **FOR PARTIAL SUMMARY JUDGMENT- 4**

**2.  Vicarious Liability**

The U.S. Supreme Court has held that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *EEOC v. Dinuba Medical Clinic*, 222 F.3d 580, 586 (9th Cir. 2000), quoting *Faragher*, 524 U.S. at 807-08.  Under this rule, "[i]f the harassment is actionable and the harasser has supervisory authority over the victim, we presume that the employer is vicariously liable for the harassment." *Id*., quoting *Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 956 (9th Cir. 1999).

The presumption of vicarious liability "may be overcome only if the alleged harassment has not culminated in a tangible employment action, and then only if the employer can prove both elements of the affirmative defense" enunciated in *Faragher*. *Id*. at 586-87, quoting *Burrell*, 170 F.3d at 956.  This affirmative defense requires proof of two elements by a preponderance of the evidence:  "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm otherwise." *Id*. at 587, quoting *Faragher*, 524 U.S. at 807.

**3.  Liability for Co-Worker Harassment**

There is no vicarious Title VII liability for sexual harassment perpetrated by non-supervisory co-workers.  Where harassment is by a co-worker, liability is not derivative; it is direct. *Swenson v. Potter*, 271 F.3d 1184, 1191-92 (9th Cir. 2001).  The plaintiff must prove the employer knew or should have known of the co-worker harassment and did not take adequate steps to address it.

**ORDER RE PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT- 5**

1   *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001).  Notice to the

2   employer means notice to management or a supervisor.  *Brooks v. City of San*

3   *Mateo*, 229 F.3d 917, 925 n. 6 (9th Cir. 2000).  When a supervisor "possesses

4   substantial authority and discretion to make decisions concerning the terms of

5   the harasser's or harassee's employment . . . [or] lacks such authority [but] has

6   an official or strong de facto duty to act as a conduit to management for

7   complaints about work conditions," any knowledge he has about co-worker

8   sexual harassment can be imputed to the employer.  *Swinton*, 270 F.3d at 804-

9   05.

10

11  **II.  DISCUSSION**

12      **A.  Juan Marin as a "Manager" Under The WLAD**

13          Based on the "Undisputed Facts" identified by Plaintiffs in their "Reply

14  To Defendant Evans Fruit's Counter Statement Of Facts" (ECF No. 659 at pp.

15  2-5)- and which this court agrees are undisputed- there is no question that Marin

16  wielded considerable authority and power at the Sunnyside Ranch as the ranch

17  foreman.  The court, however, cannot find as a matter of law, at this time, that

18  Marin was an "alter ego" of Evans Fruit with regard to the Sunnyside Ranch,

19  even if he had enough authority and power to affect, to some extent, the hours,

20  wages, and working conditions of the employees at the ranch.  This is because

21  of the evidence Evans Fruit has presented regarding the role of Tim Evans as

22  ranch manger and Marin reporting to Tim Evans as his superior.  That said, the

23  court acknowledges this rationale may not be as sound for the period after Tim

24  Evans became ill and was unable to discharge his duties at the Sunnyside

25  Ranch.  William Evans, co-owner of Evans Fruit and the father of Tim Evans,

26  testified his son was too ill for the last year and a half to two years before his

27
    **ORDER RE PLAINTIFFS' MOTION**
28  **FOR PARTIAL SUMMARY JUDGMENT- 6**

death in October 2010 to be involved in running the Sunnyside Ranch.  This seemingly created a situation where Marin had even greater authority and power with regard to the operation of the Sunnyside Ranch after approximately October 2008.

There is a genuine issue of material fact whether Marin was a "manager" under the WLAD such that any harassing conduct on his part should automatically be imputed to Evans Fruit as his employer.  A jury will decide this question based on the evidence presented to it, although the court reserves its discretion to find as a matter of law before the case is submitted to the jury (Fed. R. Civ. P. 50(a)) that Marin was a "manager" under the WLAD for all of the time, or at least a period of the time, during which he served as foreman of the Sunnyside Ranch.[1]

### B.  Juan Marin as a "Supervisor" Under Title VII

Evans Fruit relies on authority from the Seventh and Eighth Circuits, *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1034 (7th Cir. 1988), and *Weyers v. Lear Operations Corp.*, 359 F.3d 1049, 1056-57 (8th Cir. 2004), which deem an employee a supervisor if he has the power to make key personnel decisions, specifically the power to hire, fire, demote, promote,

---

[1]Likewise, the court reserves its discretion to find as matter of law that Marin was Evans Fruit's "proxy" for all of the time, or at least a period of the time, during which he served as foreman of the Sunnyside Ranch, such that any harassing conduct on his part would automatically be imputed to Evans Fruit for Title VII purposes.

**ORDER RE PLAINTIFFS' MOTION**
**FOR PARTIAL SUMMARY JUDGMENT- 7**

1   transfer, or discipline.  Other circuits have considered that approach (power to

2   take formal employment actions) to be too narrow.  In *Mack v. Otis Elevator*

3   *Co.*, 326 F.3d 116 (2nd Cir. 2003), the Second Circuit, noting that under the

4   *Ellerth* and *Faragher* holdings an employer may be vicariously liable even for

5   the misbehavior of employees who do not take tangible employment actions

6   against their subordinate victims, concluded that:

7           The question in such cases is not whether the employer gave
            the employee the authority to make economic decisions
8           concerning his or her subordinates.  It is, instead, whether
            the authority given by the employer to the employee
9           enabled or materially augmented the ability of the latter to
            create a hostile work environment for his or her subordinates.
10          We therefore conclude that the authority that renders a person
            a supervisor for purposes of the Title VII analysis is broader
11          than that reflected in the *Parkins* test.

12  326 F.3d at 126.

13          There is a split among the federal courts with one camp focusing on the

14  power to make key personnel decisions and the other on power to direct on-the-

15  job activities.[2]  Apparently, the Ninth Circuit has not identified which camp it is

16  in, but it is this court's belief it would be more inclined to follow the Second

17  Circuit (*Mack*) than the Seventh (*Parkins*) and the Eighth (*Weyers*) circuits.

18          Consistent with its previous decision in *Weyers*, the Eighth Circuit in its

19  recent decision in *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657 (8th Cir.

20  2012), found that lead drivers for CRST, a large interstate trucking company,

21

22          [2]On June 25, 2012, the U.S. Supreme Court granted a petition for writ of

23  certiorari, 2012 WL 2368689, to review the Seventh Circuit's decision in

24  *Vance v. Ball State University*, 646 F.3d 461 (7th Cir. 2011).  Recognizing the

25  split among the circuits, the Supreme Court will address the question of who

26  qualifies as a "supervisor" under Title VII.

27  **ORDER RE PLAINTIFFS' MOTION**
28  **FOR PARTIAL SUMMARY JUDGMENT- 8**

1    were not "supervisors" of female trainees assigned to long-haul trips because

2    they did not have power to take tangible employment action against them such

3    as authority to hire, fire, promote, or reassign to significantly different duties.

4    At best, they could only dictate minor aspects of the trainees' work experience,

5    such as scheduling rest stops during team drives and issue non-binding

6    recommendations to superiors at the conclusion of the training program

7    concerning whether the company should upgrade a particular trainee to full-

8    driver status.  The Eighth Circuit rejected the idea that a co-worker's "apparent

9    authority" could constitute an adequate basis for finding "supervisor" status.

10   679 F.3d at 684-85.

11        One of the judges on the Eight Circuit panel dissented from the majority's

12   conclusion that the lead drivers were not "supervisors:"

13        The district court's analysis overlooked the practical reality
          created by the relationship between the trainer and the trainee
14        in living and working together in the confined space of a truck
          over long routes and by the unusual level of control the
15        trainers exercised over every aspect of the trainees' existence
          on the road.  **The isolated work environment, trainees'**
16        **extended time alone with the trainer, the lack of oversight**
          **from company management, the trainers' near total control**
17        **over trainees' daily lives, and the trainers' substantial**
          **control over trainees' promotion chances are sufficient**
18        **to categorize the trainers as supervisors**.

19   *Id*. at 698 (emphasis added).  This dissenting opinion is in accord with the

20   Second Circuit's "material augmentation" standard (authority given by the

21   employer to the employee enabled or materially augmented the ability of the

22   latter to create a hostile work environment for his or her subordinates).

23        Under either the more stringent standard of the Seventh and Eighth

24   Circuits,  or the less stringent standard of the Second Circuit, this court

25   concludes as a matter of law that in his capacity as Sunnyside Ranch foreman,

26   Marin was a "supervisor" under Title VII.  He made decisions about who to hire

27   **ORDER RE PLAINTIFFS' MOTION**
28   **FOR PARTIAL SUMMARY JUDGMENT- 9**

at the Sunnyside Ranch, even if Tim Evans set the hiring levels.  He oversaw the crew leaders and delegated assignments to them.  He had the authority to promote orchard laborers to crew leaders.  He had authority to reassign employees as a disciplinary measure, and he had the authority to terminate and lay off employees.[3]   Marin made key personnel decisions.  Furthermore, the authority and power he was entrusted with by Evans Fruit enabled or materially augmented his ability  to create a hostile work environment for his subordinates (if he did in fact create such).  Accordingly, under Title VII, any sexual harassment perpetrated by Marin results in vicarious liability for Evans Fruit unless it successfully establishes the elements of the *Ellerth-Faragher* affirmative defense.

Furthermore, because Juan Marin was a supervisor who had sufficient authority to render Evans Fruit presumptively vicariously liable for his own alleged acts of sexual harassment, his knowledge of alleged acts of sexual harassment by crew leads (be they considered "supervisors" or general laborers) is properly imputed to Evans Fruit so as to render Evans Fruit liable for any harassment by those crew leads if it did not take adequate steps to address such harassment.


**C.  Crew Leads As "Supervisors" Under Title VII**

The record establishes a genuine issue of material fact whether crew leads had independent authority to hire, fire or discipline other employees so as to

---

[3]These are undisputed facts.  See Plaintiffs'"Reply To Defendant Evans Fruit's Counter Statement Of Facts" (ECF No. 659 at pp. 2-5).


**ORDER RE PLAINTIFFS' MOTION**
**FOR PARTIAL SUMMARY JUDGMENT- 10**

make them "supervisors" under Title VII and potentially result in vicarious
liability of Evans Fruit for any harassment perpetrated by them.

Although Evans Fruit has produced evidence that these crew leads did not
have independent authority to hire, fire or discipline other employees, the lack
of such authority does not necessarily mean the crew leads were not supervisors.
Pursuant to the Second Circuit's decision in *Mack*, certain other authority given
to the crew leaders (telling the field workers what blocks to work in, when to
start, and when they could go on break) arguably "enabled or materially
augmented" their ability to create a hostile work environment for their crew
members (if one was in fact created). At this juncture, the court intends to
instruct the jury per the *Mack* standard.

Of course, if crew leads are mere co-workers (not supervisors), Evans
Fruit is liable for harassment perpetrated by them only if Evans Fruit knew or
should have known of the harassment and did not take adequate steps to address
it.

### D.  Duty To Act As Conduit To Management For Complaints

Since 2006, Evan Fruit has had a written policy for dispute resolution
which expressly encourages employees to approach a crew leader or a foreman
to address any concerns. If the crew leader or foreman does not provide a
satisfactory response, employees are encouraged to report concerns to the ranch
manager or directly to the owners of Evans Fruit (William and Jeanette Evans).

In 2008, Evans Fruit created a sexual harassment policy which was
disseminated to foremen and crew leads. Mr. Evans held a meeting with
foremen and crew leads to review the policy. Crew leads were advised that
when they investigated a complaint of sexual harassment, they should conduct

**ORDER RE PLAINTIFFS' MOTION**
**FOR PARTIAL SUMMARY JUDGMENT- 11**

an unbiased investigation and immediately report to Mr. and Mrs. Evans.  All employees received a copy of the sexual harassment policy which instructs employees to bring any complaints to a supervisor or directly to the owners (Mr. and Mrs. Evans).

Pursuant to the aforementioned policies, Juan Marin, as a supervisor under Title VII, had "corporate authority to police for and to stop harassment, or the managerial duty to report" alleged harassment.  *Huston v. Proctor Gamble Paper Products Corporation*, 568 F.3d 100, 108 (3rd Cir. 2009).  Accordingly, any knowledge Marin possessed regarding sexual harassment by crew leads or other employees since 2006  can be imputed to Evans Fruit and serve as a potential basis for its liability under Title VII.  *Brooks*, 229 F.3d at 925 n. 6 (recognizing imputation where an employee who has "general responsibility for passing employment-related complaints up the corporate hierarchy" receives a complaint of harassment).  Furthermore, because crew leads had responsibility for reporting alleged harassment and passing complaints up the corporate hierarchy, if they are found to be supervisors under Title VII, any knowledge they possessed regarding sexual harassment by other employees since 2006 can be imputed to Evans Fruit and serve as a potential basis for its liability under Title VII.

### E.  Defenses To Title VII Liability

Evans Fruit contends liability cannot be imputed to it regardless of whether Marin and/or the crew leaders were "supervisors" because it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and the claimants here unreasonably failed to take advantage of preventive or corrective opportunities provided by Evans Fruit.  Evans Fruit

**ORDER RE PLAINTIFFS' MOTION**
**FOR PARTIAL SUMMARY JUDGMENT- 12**

seemingly asks the court to rule as a matter of law that it cannot be held vicariously liable pursuant to its *Ellerth-Faragher* defense, and that it is not liable in its own right for any co-worker harassment because it took adequate steps to address that harassment.  Application of these defenses depends on the circumstances regarding each claimant.  Therefore, a ruling as a matter of law at this juncture would be improper.  The jury will be instructed regarding the defenses.

**III.  CONCLUSION**

Plaintiffs' Motion For Partial Summary Judgment (ECF No. 559) is **GRANTED in part** and **DENIED in part**.  It is **GRANTED** to the extent the court finds as a matter of law that Juan Marin was a "supervisor" for Title VII purposes.  It is **DENIED** to the extent the court finds there are remaining genuine issues of material fact as to whether crew leads were "supervisors" for Title VII purposes and whether Juan Marin was a "manager" for purposes of the WLAD.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this order and to provide copies to counsel.

**DATED** this ___27th___ day of November, 2012.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
U. S. District Court Judge

**ORDER RE PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT- 13**