IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION<br><br>Plaintiff,<br><br>and<br><br>ELODIA SANCHEZ, et al.,<br><br>Plaintiffs-Intervenors,<br><br>v.<br><br>EVANS FRUIT CO., INC.<br><br>Defendant,<br><br>and<br><br>JUAN MARIN and ANGELITA MARIN, a marital community,<br><br>Defendants-Intervenors. | NO. CV-10-3033-LRS<br><br>**ORDER RE MOTION FOR RECONSIDERATION** |

**BEFORE THE COURT** is Plaintiffs' Motion For Reconsideration Of Second Summary Judgment Order And To Supplement Record (ECF No. 757). This motion is heard without oral argument.

**BACKGROUND**

In its Second Order Re Evans Fruit Co., Inc's Motion For Summary Judgment (ECF No. 739 ), the court awarded summary judgment to Evans Fruit

on claims asserted against it by certain EEOC class members, including: Maria Carmen Zaragoza, Magdalena Alvarez (2001 claims), Eufrocina Hernandez, Norma Valdez, Angela Mendoza, Jacqueline Abundez, Dolores Sagal, Jennifer Ruiz, Vanessa Aviles and Esmeralda Aviles.[1] Plaintiffs now seek reconsideration of the judgment awarded on the claims of Hernandez, Valdez, Mendoza, Abundez, Sagal, Ruiz, and Vanessa and Esmeralda Aviles.

This court reviewed the portion of the parties' memoranda regarding each specific class member, the respective statements of facts regarding each specific class member, and every excerpt of deposition testimony cited with regard to each specific class member. Although the court may not have referred to every fact cited by the parties, the parties can rest assured the court reviewed the entirety of the record cited by the parties in regard to each class member.

---

[1] Although the court did not explicitly state so in its order, the effect of its ruling was to also grant summary judgment to Evans Fruit on the Title VII, WLAD, and negligence claims asserted against it by Vanessa Aviles and Esmeralda Aviles in their individual capacities as Plaintiffs-Intervenors. Consistent therewith, the court also awarded summary judgment to Defendant-Intervenor Juan Marin on the WLAD claims of Plaintiffs-Intervenors Vanessa Aviles and Esmeralda Aviles (ECF No. 740). In this order, there is no need to distinguish them either as EEOC class members or Plaintiffs-Intervenor.

**RECONSIDERATION STANDARD**

A motion for reconsideration can only be granted when a district court: (1) is presented with newly discovered evidence; or (2) committed clear error or the initial decision was manifestly unjust; or (3) there has been an intervening change in controlling law. *Dixon v. Wallowa County*, 336 F.3d 1013, 1022 (9th Cir. 2003). This court employs this standard whether the order at issue is an interlocutory order or a final order.

**DISCUSSION**

There is no question that for a sexual harassment claimant to survive summary judgment, there must be evidence creating a genuine issue of material fact that she herself was personally subject to such harassment. The authorities cited by Plaintiffs recognize this fundamental principle, notwithstanding the statement in *Vinson v. Taylor*, 753 F.2d 141, 146 (D.C. Cir. 1985), that "[e]ven a woman who was never herself the object of harassment might have a Title VII claim if she were forced to work in an atmosphere in which such harassment was pervasive."[2] In *Vinson* itself, the question was whether the district court had erred in refusing "to allow Vinson [the plaintiff] to elicit, from other women under Taylor's supervision during her tenure, testimony that assertedly would have established that Taylor **sexually harassed them <u>also</u>** ." *Id*. (emphasis added). See also *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2nd

---

[2] It is noted that the only authority the *Vinson* court cited in support of its statement was an EEOC administrative decision. 753 F.2d at 146, n. 41.

Cir. 2000)("[b]ecause the crucial inquiry focuses on the nature of the workplace environment as a whole, **a plaintiff who herself experiences discriminatory harassment** need not be the target of other instances of hostility in order for those incidents to support her claim")(Emphasis added).

Requiring a plaintiff to have personally experienced discriminatory harassment is not at odds with the "totality of the circumstances" approach. Rather, it is an essential element of the analysis. "The factfinder may consider **similar acts of harassment** of which a plaintiff becomes aware during the course of his or her employment, even if the harassing acts were directed at others or occurred outside of the plaintiff's presence." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 336 (6th Cir. 2008) (emphasis added). This "totality of the circumstances" approach was employed by this court in determining whether there was sufficient evidence to create a genuine issue of material fact whether a particular claimant was exposed to a sexually hostile work environment. This court considered whatever evidence was presented by a claimant as to not only alleged harassment experienced by her, but alleged harassment of other female employees of which she was actually aware. As to each of the class members against whom summary judgment was awarded, the court concluded the evidence was insufficient to raise a genuine issue of material fact that they had experienced discriminatory harassment which was severe or pervasive enough to alter the terms and conditions of their employment. As such, to the extent any of them were aware of "hostility" directed at another female employee, that alone was insufficient to salvage their claims. Awareness of "hostility" directed at others does not, by itself, give rise to an actionable sexual harassment claim. There must be some evidence of

"hostility" directed at the claimant herself.

Furthermore, "[i]mplicit in the consideration of the totality of the circumstances is that a plaintiff was aware of the harassment that was allegedly directed toward other employees." *Berryman v. Supervalu Holdings, Inc.*, 669 F.3d 714, 718 (6th Cir. 2012). For an instance of alleged harassment of another employee to have any relevance to the sexual harassment claim of an EEOC class member, there must be evidence in the record that the class member was aware of that other instance of alleged harassment. It is EEOC's burden to present evidence of each element of the hostile work environment claim for each individual claimant, rather than presenting evidence of a hostile work environment in the aggregate. *EEOC v. Swissport Fueling, Inc.*, _____ F.Supp.2d _____, 2013 WL 68620 (D. Ariz. 2013).

In its summary judgment order, this court analyzed the EEOC's evidence to see whether it met its burden to overcome summary judgment for each claimant individually. In this order, the court will briefly revisit the evidence that was offered by the EEOC with regard to the claimants against whom summary judgment was awarded, keeping in mind that to determine whether conduct is sufficiently severe or pervasive to violate Title VII, a court must consider "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003)(quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71, 121 S.Ct. 1508, *reh'g denied*, 533 U.S. 912, 121 S.Ct. 2264 (2001). "The working environment must both subjectively and objectively be

perceived as abusive." *Id*.

**Dolores Sagal**

Ms. Sagal testified that no one ever said anything inappropriate to her or touched her inappropriately. (ECF No. 583-1, p. 17).

That she was told by Juan Marin that Rosa Christina Alvarez was "young" and "hot" (*Id*. at p. 19), that Ester Abarca was "hot" and had a "nice body," (ECF No. 645-10 at p. 27), and that Danelia Barajas had a "very nice body" (*Id*.) were, at most, mere offensive utterances.

Ms. Sagal testified that on one occasion, she overheard "El Huatches" telling "La Becerra" that she would always have work there because she had had sex with Marin. She asked Marin about it and he said it was "just rumors" and he would "take care of it." (ECF No. 583-1 at p. 28). Ms. Sagal also testified to hearing "rumors" that any woman who was working year round was having sex with Juan. (*Id*. at p. 27). These rumors simply do not rise to the level of severity necessary to create a genuine issue of material fact that Ms. Sagal was subjected to a sexually hostile work environment.

Ms. Sagal told Marin he was "crazy" when he offered to buy her son. ((ECF No. 583-1 at p. 71). Even if this offer could be considered a form of sexual harassment[3], it is apparent from Ms. Sagal's response that it did not

---

[3] In its order granting summary judgment to the Marin Defendants (ECF No. 740), this court found the alleged baby-buying offers made to EEOC class members and Plaintiffs-Intervenors, Elodia Sanchez and Danelia Barajas, were

unreasonably interfere with her work performance.[4]

Ms. Sagal testified Marin drove her and Rosa Christina Alvarez to a house he bought and told them Alvarez could live in the house and Ms. Sagal could be her mother and Marin would give Ms. Sagal the rent money to pay to Marin's wife. Alvarez's response was that the offer was "silly" and she could not accept it. (ECF No. 645-10 at p. 19). Ms. Sagal testified that Marin never touched Alvarez, never asked her for sex, but asked her to imagine what their child would look like if they had one together. (*Id*. at p. 24). It is apparent from Alvarez's response to Marin that she did not feel threatened or humiliated by him. Because this was not sexual harassment as to Alvarez, it cannot constitute harassment of Ms. Sagal who herself testified she never claimed to have been sexually harassed. (ECF No. 583-1 at p. 19).[5] In the record, there is testimony from Ms. Sagal that "[o]ne day, he [Marin] said that she [Alvarez] was a virgin and that it would be really nice to be with a virgin." (ECF No. 678-7 at p. 85).

---

not because of their gender and therefore, could not constitute sexual harassment.

[4] In a similar vein, Ms. Sagal testified she told Marin she had spoken to the EEOC investigator and told him there were no problems with Marin, when in fact she never spoke to any investigator. (ECF No. 645-10 at p. 66).

[5] Ms. Sagal testified she informed Marin that she would not be a party to such an arrangement because it was not right. (ECF No. 678-7 at p. 87).

It is unclear, however, whether Marin made this statement to Alvarez or to Sagal. In any event, as to Ms. Sagal, it was at most an offensive utterance as evidenced by her testimony that she never claimed to have been sexually harassed.

Finally, it is noted that Ms. Sagal testified she left the employ of Evans Fruit because Naul Arellano was "hostile," not because of an asserted sexually hostile work environment. (ECF No. 678-7 at p. 82).

In Ms. Sagal's case, the evidence does not give rise to a genuine issue of material fact precluding a finding as a matter of law that the working environment was not subjectively perceived by her as abusive and was not objectively so either. The court did not clearly err in awarding Evans Fruit summary judgment on Ms. Sagal's claim, nor was it manifestly unjust to do so.

**Jennifer Ruiz**

In its consideration of the evidence presented regarding Ms. Ruiz, this court was aware she was 17 years old because the EEOC pointed this out in its briefing. It was also repeatedly mentioned by Ms. Ruiz in her deposition testimony which was reviewed by the court. (ECF No. 583-3 at pp. 172, 176 and 178). Regardless of her age, the conduct which she alleges made her "uncomfortable" during her brief two weeks of employment was not severe or pervasive enough to create a genuine issue of material fact that she was exposed to a working environment that could subjectively and objectively be perceived as abusive. The fact Ms. Ruiz thought Marin was the owner of Evans Fruit makes no difference. The conduct alleged by Ms. Ruiz is clearly distinguishable from the conduct at issue in *Fox v. Premier Immediate Medical*

*Care*, 2012 WL 60432869 (E.D. Pa. December 3, 2012), cited by the EEOC. In *Fox*, the plaintiff alleged her harasser told her she had a nice body, touched her on the shoulder and neck, gave her prescription drugs which she did not take, and asked her to lay down in a private room.

The court did not clearly err in awarding Evans Fruit summary judgment on Ms. Ruiz's claim, nor was it manifestly unjust to do so.

**Vanessa and Esmeralda Aviles**

In awarding summary judgment to Evans Fruit and to Marin on the claims of Vanessa and Esmeralda Aviles, this court was aware of their young ages because Plaintiffs emphasized it in their briefing and their oral argument to the court, and it was mentioned in the deposition testimony of the Aviles sisters cited to the court (ECF No. 646-11 at p. 8; ECF No. 646-10 at p. 11). As with Ms. Ruiz, however, it made no difference because the conduct alleged by them during their approximately six weeks of employment was simply not severe or pervasive enough to create a genuine issue of material fact that they were exposed to a sexually hostile work environment.

In their motion for reconsideration, Plaintiffs cite Fact No. 201 in the "Counterstatement of Facts" (ECF No. 643) which they filed in opposition to Evans Fruit's motion for summary judgment. Fact No. 201, however, pertains to Sylvia Isquierdo. There is no evidence in the record cited to this court that Vanessa Aviles was actually touched on the buttocks with a branch or anything else by one of the crew leaders ("Huatches"). The evidence in the record is that on one occasion, a crew leader told her he would let her slap him if she let him spank her with a tree branch. Esmeralda Aviles testified to having the same

experience on one occasion, but that she simply ignored "Huatches" and he went away. (ECF No. 583-5 at pp. 362-63).

There is no evidence in the record cited to this court that Vanessa Aviles knew this same crew leader has asked her sister, Veronica Reyna, to have sex with him. Fact No. 253 (ECF No. 643) refers to deposition testimony of Ms. Reyna in which she recounts the crew leader asked her to have sex. It does not refer to testimony from Ms. Reyna that she informed either of her sisters (Vanessa or Esmeralda) of this, nor does it refer to testimony from Vanessa or Esmeralda that they had been so informed by their sister. It cannot be assumed that either Vanessa or Esmeralda knew about it. They did not testify they overheard any comments made to Ms. Reyna, or that Ms. Reyna told them about it. Whether intended or not, this is an attempt by Plaintiffs to improperly aggregate the claims of Vanessa and Esmeralda Aviles with the claim of their sister, Ms. Reyna.

Vanessa Aviles did testify that Esmeralda told her about this same crew leader having asked her for a "full body picture." (ECF No. 646-11 at p. 45). Esmeralda Aviles simply assumed this meant a photo of her in the nude. Because this request does not constitute sexual harassment of Esmeralda Aviles and at most, was an offensive utterance, if that, it does nothing to bolster Vanessa Aviles's claim. This is particularly so when Vanessa Aviles herself did not experience conduct which was severe or pervasive enough to create a genuine issue of material fact that she was subjected to a sexually hostile work environment.

Esmeralda Aviles testified Vanessa complained to her about how she was treated at Evans Fruit (i.e. a "Rafael" allegedly telling Ysidro, who then told the

sisters, that "Rafael" wanted to ask Vanessa out to have sex with him and then break up with her), (ECF No. 646-10 at pp. 46-47). These allegations do not constitute sexual harassment of Vanessa Aviles and do nothing to bolster Esmeralda Aviles's claim when she herself did not experience conduct which was severe or pervasive enough to create a genuine issue of material fact that she was subjected to a sexually hostile work environment.

The court did not clearly err in awarding summary judgment to Evans Fruit and Marin on the claims of Vanessa and Esmeralda Aviles, nor was it manifestly unjust to do so.

**Angela Mendoza**

There simply is no admissible evidence that Ms. Mendoza was personally subjected to sexual harassment while she was employed at Evans Fruit. Her claim is based entirely on what allegedly occurred to her daughter, Jacqueline Abundez. This is insufficient to create a genuine issue of material fact that Ms. Mendoza was subjected to a sexually hostile work environment. The additional evidence now cited by the EEOC (additional deposition testimony of Ms. Mendoza, ECF No. 759-2) is inconsequential.

The court did not clearly err in awarding summary judgment to Evans Fruit on the claim of Angela Mendoza, nor was it manifestly unjust to do so.

**Jacqueline Abundez**

In evaluating the claim of Ms. Abundez, the court was aware of her young age. It made no difference. Contrary to the EEOC's assertion, the court cannot "reasonably draw an inference that there exists a genuine issue of fact

whether Jacqueline was subjected to a hostile work environment" because of "Marin's conduct with other women and the plural language in Ms. Abundez's EEOC charge that she was subjected to 'unwelcome sexual comments and advances by Juan Marin.'" The language in the EEOC charge is vague and the court will not improperly aggregate Ms. Abundez's claims with all of the other claims asserted against Marin. There is no evidence in the record that Ms. Abundez was aware of harassment directed at other female employees. The additional testimony of Gerardo Silva offered by the EEOC, even assuming it concerns Ms. Abundez, is inconsequential for the cogent reasons articulated in the memorandum opposing the motion for reconsideration filed by Defendant Marin. (ECF No. 763 at pp. 10-11).

The court did not clearly err in awarding summary judgment to Evans Fruit on the claim of Jacqueline Abundez, nor was it manifestly unjust to do so.

**Eufrocina Hernandez**

Sexual comments allegedly made directly to Ms. Hernandez by Marin concerning other women, including unidentified women in the workplace, do not constitute "second hand" harassment of Ms. Hernandez. The court acknowledges it erred in labeling them as such. The sexual comments allegedly made to Ms. Hernandez by Marin are more than mere offensive utterances and they were pervasive. Ms. Hernandez says she would hear comments from Marin on an almost daily basis. (ECF No. 645-4 at p. 161-

62).[6]

The linchpin of the court's finding that Ms. Hernandez was not subjected to a hostile work environment was that the comments made to her after October 22, 2005, did not unreasonably interfere with her work performance. Ms. Hernandez did not pass on any of Marin's comments to other women in the workplace, even though she told Marin she did so. (ECF No. 645-4 at pp. 80-81). And she testified that at some point prior to 2009, she had a conflict with Marin and lost his "trust" and the "trust" of some of the crew leaders. (ECF No. 678-15 at p. 196). This was because she was willing to complain that she was not being fully compensated for hours she had worked while other female employees were allegedly being compensated for hours they had not worked. According to Ms. Hernandez, after she complained, Marin would no longer talk to her about other women in the workplace and he and particular crew leaders warned the women who were allegedly being compensated for hours they had not worked that they should not say anything to Ms. Hernandez because she was prepared to make it known this was occurring at Evans Fruit. (ECF No. 678-15 at pp. 94-96).

Ms. Hernandez also testified that at some point[7], a letter arrived from

---

[6] Ms. Hernandez did not testify that Alberto Saldivar showed her a cell phone photo of his penis. She has not testified this is a component of her sexual harassment claim.

[7] Perhaps in 2006 after the formal charge was filed by Ms. Abundez and after Ms.

Seattle (presumably the EEOC field office) seeking information about Marin and that Marin asked her to call the person seeking the information and to say that none of the allegations of sexual harassment by Marin were true. Ms. Hernandez testified she informed Marin she was not going to call that person, and if she received a call from that person, she was not going to talk to him. According to her, she refused to let Marin "control" her anymore. (ECF No. 645-4 at pp. 176-77).

Notwithstanding the foregoing, the court notes there are other portions of Ms. Hernandez's deposition testimony where she professes to fear reprisal if she complained about other women being compensated for work they did not do (ECF No. 645-4 at pp. 97-98), and if she did not comply with Marin's requests (ECF No. 645-4 at pp. 173-75). As such, the court concludes there is a genuine issue of material fact whether Ms. Hernandez was subjected to a sexually hostile work environment that unreasonably interfered with her work performance. A jury should make that determination.[8]

At trial, however, Ms. Hernandez will not be allowed to testify about

---

Hernandez says she was coerced by Marin to write a letter on his behalf (ECF No. 645-4 at pp. 169-70; 173-75).

[8] In its motion for reconsideration, EEOC does not challenge this court's determination that Marin's alleged attempted rape of Ms. Hernandez in 1995, 1996 or 1997 is time barred as a matter of law, or otherwise barred as a matter of equity under the doctrine of laches. (ECF No. 739 at pp. 12-13).

alleged sexual harassment of Norma Valdez that Ms. Hernandez says she witnessed or heard about from Ms. Valdez. Ms. Valdez herself has not testified about these things, as discussed below.

**Norma Valdez**

The EEOC says the court "overlooked" certain testimony of Ms. Valdez contained in deposition excerpts provided by Defendant Evans Fruit, but not referred to in the EEOC's "Counterstatement of Facts" (ECF No. 643 at p. 52), nor in EEOC's memorandum in opposition to Evans Fruit's motion for summary judgment (ECF No. 642 at pp. 74-75). It was the EEOC's burden first and foremost to point out to the court the portions of the record which it believed supported its contention that Ms. Valdez was subjected to a sexually hostile work environment while employed at Evans Fruit. What the EEOC primarily relied on to support Ms. Valdez's claim was testimony by Ms. Hernandez, not testimony by Ms. Valdez.

During her deposition, Ms. Valdez acknowledged that in her EEOC charge, she alleged Juan Marin had tried to hug and kiss her on two occasions, and that one of the occasions was when she started to work at Evans Fruit which must have been in 2004. She says she could not recall the date of the other incident. (ECF No. 583-5 at pp. 300-01). Ms. Valdez was first employed at Evans Fruit from October 2004 through October 2005, and then returned to work at Evans Fruit in September 2006. She worked from September 2006 to December 2006, and then for approximately two weeks in the fall of 2007. (Evans Fruit Uncontested Statement Of Fact No. 181, ECF No. 679 at p. 73). In the opposition it filed to Evans Fruit's motion for summary judgment, the

EEOC did not point out these alleged attempted hugging/kissing incidents.

Ms. Valdez testified that in addition to the alleged hugging/kissing incidents, each time Marin "would have us go in his pickup to change us to another area to go and check the people at another area he was always trying to touch our legs all the time." (ECF No. 583-5 at p. 302). She also testified that she heard from other persons in the workplace, none of whom she could identify, that Marin was telling them he had had sex with her, that her son was his son, and that she was pregnant with his child. (*Id*. at 304-05; ECF No. 645-3 at pp. 44-46). Ms. Valdez testified that Marin acknowledged to her the existence of these rumors and that he seemed to derive enjoyment from it, but he did not admit starting the rumors (*Id*. at pp. 306 and 308).

Pursuant to Fed. R. Civ. P. 56(e)(1)[9], the EEOC asks the court to consider additional deposition testimony of Ms. Valdez that it did not cite or provide in its opposition to Evans Fruit's motion for summary judgment. This additional testimony includes the following: 1) every time Marin addressed her, he would call her "my love" or "my dearest" (ECF No. 759-1 at pp. 37-38); 2) that she did not know how many times he attempted to touch her legs while she was riding in his pickup, but it got to the point where she would walk or drive on her

---

9 Fed. R. Civ. P. 56(e)(1) provides:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact . . . .

own to the other places Marin wanted her to go, and that the attempts to touch her legs happened from 2004 until when she left Evans Fruit in 2007 (*Id*. at 39-40).

The court will consider this additional evidence, primarily because similar evidence is already in the record and it is not unfairly prejudicial to Defendant Evans Fruit that it be considered. Furthermore, in the opposition it filed to Defendant's summary judgment motion, EEOC asserted that "Ms. Valdez testified unequivocally about Marin's constant sexual advances in his truck, his constant bragging that he has "had" her, his spread[ing] of rumors that he is the father of her sons; and that he bought her a car," (ECF No. 642 at p. 74), even though it did not specifically refer to attempted hugging/kissing and attempted touching of legs. Although the alleged hugging/kissing incidents are untimely because they apparently occurred prior to October 22, 2005, they are actionable pursuant to the continuing violation theory because they are sufficiently related to alleged acts by Marin after October 22, 2005 (i.e., attempted touching of legs). The totality of these alleged acts is sufficient to create a genuine issue of material fact that Ms. Valdez was subjected to a sexually hostile work environment which unreasonably interfered with her work performance.

As noted above, in the opposition it filed to Evans Fruit's summary judgment motion, EEOC emphasized Ms. Hernandez's testimony. This testimony included that: 1) Ms. Valdez told Ms. Hernandez that Marin had raped her [Valdez] (ECF No. 645-4 at pp. 73-74; 187-88), although EEOC conceded "Ms. Valdez is not emotionally ready to acknowledge this, especially since Marin publically raised the issue of his parentage of her child with her

current partner Gerardo Silva." (ECF No. 642 at p. 74); 2) that Marin "repeatedly" told Ms. Hernandez that he was in love with Ms. Valdez, that he wanted to be with her, and that he wanted to have a son with her (ECF No. 645-4 at pp. 81;187; 3) that Ms. Hernandez heard Marin tell Ms. Valdez he would give her anything- a house, a car- if she would have sex with him (ECF No. 645-4 at p. 72); 4) that Marin told Ms. Hernandez he bought Ms. Valdez a truck (ECF No. 645-4 at p. 83) "because she had sex with him and he thought she was pregnant with his baby" (ECF No. 642 at p. 75); and 5) that on one occasion Ms. Hernandez and Ms. Valdez were in Marin's pickup when Marin "started to sexually assault Ms. Valdez" and "Ms. Valdez had to fight him off for more than twenty minutes before he would return them to work" (ECF No. 642 at p. 75). With regard to the latter, it is noted that in her deposition testimony, Ms. Hernandez did not describe this as a "sexual assault." She testified that Ms. Valdez was sitting in the middle and "Juan would try to grab her and kiss her and she would get away from him;" that they were in the truck "about 20 minutes;" and that Ms. Valdez was saying "no, no, no" and was upset, but was not crying. (ECF No. 645-4 at pp. 189-192).

Ms. Valdez's claim will be reinstated, but a jury will evaluate it based on her testimony about what Marin allegedly did to her (attempted hugging/kissing and attempted touching of legs) and allegedly said to her. For reasons that should be apparent, the court will not allow EEOC to present testimony from Ms. Hernandez in support of Ms. Valdez's claim.

**CONCLUSION**

Plaintiffs' Motion For Reconsideration Of Second Summary Judgment

Order And To Supplement Record (ECF No. 757) is **GRANTED in part** and **DENIED in part**.

The motion is **DENIED** with regard to Dolores Sagal, Jennifer Ruiz, Vanessa Aviles, Esmeralda Aviles, Angela Mendoza and Jacqueline Abundez. The motion is **GRANTED** with regard to Eufrocina Hernandez and Norma Valdez and their claims are reinstated. Within five (5) business days of the date of this order, Defendant Evans Fruit may serve and file amended witness and exhibit lists to account for the reinstated claims. It is noted that Eufrocina Hernandez is precluded from recovering compensatory damages per the court's orders at ECF Nos. 682 and 743. It appears Norma Valdez is not so precluded.

**IT IS SO ORDERED.** The District Court Executive is directed to forward copies of this order to counsel of record.

**DATED** this 20th day of February, 2013.

***s/LONNY R. SUKO***
LONNY R. SUKO
United States District Court Judge