1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

8
9

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

10                    Plaintiff,

11    and

12   ELODIA SANCHEZ, DANELIA
     BARJAS, and CECILIA LUA,
13

14       Plaintiffs-Intervenors,

15    v.

16
17   EVANS FRUIT CO., INC.,

18              Defendant.

19

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. CV-10-3033-LRS

**ORDER DENYING
MOTION FOR A NEW TRIAL
AND FOR POST-TRIAL
DISCOVERY PURSUANT TO
THE JURY SELECTION AND
SERVICE ACT OF 1968**

20      **BEFORE THE COURT** is the "Motion For A New Trial In The Case

21   Against Evans Fruit And For Discovery Pursuant To The Jury Selection And

22   Service Act Of 1968" (ECF No. 1013) filed by Plaintiffs-Intervenors.  This motion

23   is heard without oral argument.

24      Plaintiffs-Intervenors seek a new trial against Defendant Evans Fruit Co.,

25   Inc., alleging the jury venire was not composed of a fair cross-section of the

26   community and that this is the result of a "systemic lack of representation" of

27   Hispanics on juries in the Eastern District of Washington.  Plaintiffs-Intervenors

28   allege violations of the Jury Selection And Service Act of 1968 (JSSA) and the

**ORDER DENYING
MOTION FOR NEW TRIAL-      1**

1  Due Process and Equal Protection Clauses of the United States Constitution.

2  Plaintiffs-Intervenors seek discovery relating to the Eastern District of

3  Washington's implementation of its jury selection plan and the racial and ethnic

4  composition of juries in this district since 2009 in order "to fully prepare a jury

5  challenge . . . against Evans Fruit and to be used in the preparation of a motion in

6  Intervenors' case against Juan Marin."

7       Plaintiffs-Intervenors assert they could not raise their challenge earlier

8  "because courts have held that the constitutional and JSSA rights do not attach to a

9  single jury, but to multiple juries through a period of time" and thus, they "had to

10 investigate other trials before raising the challenge."

11      The JSSA, 28 U.S.C. Section 1867(c), provides:

12          In civil cases, before the voir dire examination begins, or
            within seven days after the party discovered or could have
13          discovered by the exercise of diligence, the grounds therefor,
            whichever is earlier, any party may **move to stay** the
14          proceedings on the ground of substantial failure to comply
            with the provisions of this title in selecting the petit jury.

15 (Emphasis added).  Here, the Plaintiffs-Intervenors did not file a motion to stay the

16 proceedings before the voir dire examination began, or within seven days after

17 they discovered or could have discovered the basis for challenging selection of the

18 petit jury.  Instead, they have filed a post-trial motion for a new trial setting forth a

19 challenge on both statutory and constitutional grounds.  It is clear the statute

20 requires that any concern about the composition of a jury venire be brought to the

21 court's attention in some fashion before a jury is empaneled to decide a case.

22      Not to the contrary are the cases cited by Plaintiffs-Intervenors which they

23 claim show that post-trial challenges to jury selection are appropriate in certain

24 situations.  In *United States v. Studley*, 783 F.2d 934, 938 (9th Cir. 1985), the

25 defendant "[**b]efore trial** . . . requested a list of all grand and petit jurors" which

26

27

28

**ORDER DENYING
MOTION FOR NEW TRIAL-     2**

the district court denied.[1]  (Emphasis added).  After trial, the defendant renewed her request, citing *Test v. United States*, 420 U.S. 28, 30, 95 S.Ct. 749 (1975)(per curiam), which holds that the right to inspect jury lists is essentially unqualified under 28 U.S.C. §1867(f) which provides that parties "shall be allowed to inspect" records of the jury selection process in order to prepare motions challenging jury selection.  The district court granted the request, but the defendant did not subsequently move for dismissal of the indictment or a new trial based upon her inspection.  On appeal to the Ninth Circuit Court of Appeals, the government conceded the defendant's pre-trial request for a list of all grand and petit jurors should have been granted, but the court of appeals declined to either reverse or remand because the defendant received the benefit of the remedy under *Test* and, although she had an opportunity to inspect the jury lists, failed to file the required §1867(a) motion within seven days.  Accordingly, her attempt to challenge jury selection was "now untimely."  *Studley*, 783 F.2d at 938.

In *United States v. Beaty*, 465 F.2d 1376, 1379 (9th Cir. 1972), cited in *Studley*, there too the defendant filed a pre-trial motion for inspection of jury records which was denied, and then renewed the motion prior to trial, pointing out that 28 U.S.C. §1867(a) permits a jury challenge "before voir dire examination begins," and that 28 U.S.C. §1867(f) relates to inspection of records before the challenge motion.  The renewed motion was denied as well and the matter went to trial and the defendant was convicted.  On appeal, the Ninth Circuit Court of

---

[1] In criminal cases, 28 U.S.C. Section 1867(a) provides that "before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury."

**ORDER DENYING
MOTION FOR NEW TRIAL-     3**

Appeals held the district court erred in denying the pre-trial motion to inspect and remanded the case to the district court for the purpose of allowing an inspection of the jury records and the filing of motion under §1867(a).  The court of appeals instructed that if a motion challenging jury selection was made and the district court found there had been a violation of the JSSA which prejudiced the defendant, the district court was to grant a motion for a new trial.

Like *Studley* and *Beaty*, the other cases cited by Plaintiffs-Intervenors also involved pre-trial motions which brought to the court's attention, prior to trial, that there might be a challenge to composition of the jury venire.  *United States v. Santos*, 588 F.2d 1300, 1303 (9th Cir. 1979)(pre-trial motion to dismiss indictment after defendant's counsel had been granted access to jury selection records; in denying motion to dismiss, court effectively found counsel had exercised the requisite diligence in challenging jury selection); *United States v. Alden*, 776 F.2d 771, 775 (8th Cir. 1985)(pre-trial motions requesting access to certain ministerial records regarding grand jury selection; trial court erred in not granting amended pre-trial motion and therefore, case was remanded to allow potential challenge to grand jury selection and if district court determined grand jury had been improperly selected, it was to vacate the judgment).

Sufficiently prior to the voir dire examination, Plaintiffs-Intervenors knew the composition of the jury venire and the number of those claiming Hispanic ethnicity.  And from the very outset of the case, Plaintiffs-Intervenors surely recognized that composition of the venire was a consideration because of the fact that Plaintiffs-Intervenors are Hispanic individuals who were employed as laborers by Defendant Evans Fruit, and the owners of Defendant Evans Fruit are not Hispanic.  Plaintiffs-Intervenors could have filed a pre-trial motion for discovery under §1867(f) along with a timely pre-trial motion to stay under §1867(c).  As the case law indicates, the right to inspect jury records is essentially unqualified. "Courts are to construe the timeliness requirement strictly as failure to comply

**ORDER DENYING**
**MOTION FOR NEW TRIAL- 4**

1    with the requirement forecloses a challenge under the [JSSA]." *United States v.*

2    *Dean*, 487 F.3d 840, 849 (11th Cir. 2007).  The procedural requirements of the

3    JSSA "are strictly enforced so that the district court has an opportunity to evaluate

4    the alleged noncompliance [with the JSSA] and to correct it before precious

5    judicial resources are invested in a trial." *Id*.  Plaintiffs-Intervenors did not

6    provide this court with any opportunity to evaluate an alleged noncompliance with

7    the JSSA before the parties and the court invested significant resources in a nearly

8    three week trial.

9            Courts have recognized that a separate and independent constitutional

10   challenge can be mounted to the selection of a petit jury.  Several circuits have

11   weighed in on the question of whether a constitutional challenge is subject to the

12   same restrictions as a statutory challenge under 28 U.S.C. §1867.  They are split

13   on the issue.  The Fifth and Eighth Circuits read §1867 to mean a defendant

14   pursuing a constitutional challenge to a jury pool need not comply with its

15   provisions.  The Eleventh Circuit, however, applies §1867's requirements to

16   constitutional challenges.  See *United States v. Green*, 435 F.3d 1265, 1270 (10th

17   Cir. 2006), wherein the Tenth Circuit summarized the state of the law but found it

18   did not need to address the question because the criminal defendant could not

19   prevail on the merits of his claim.  "The Ninth Circuit has not spoken clearly on

20   whether the failure to comply with [Section] 1867's procedural requirements bars a

21   constitutional challenge to a jury selection procedure." *United States v.*

22   *Rodriguez*, _____ F.Supp.2d _____, 2013 WL 628530 at *6, n. 21 (C.D. Cal., Jan.

23   11, 2013).  In *Rodriguez*, the Government did not claim the constitutional

24   challenges were untimely and so it was unnecessary for the court to address the

25   question.

26           The undersigned concludes that 28 U.S.C. §1867(e) supports the position

27   that the requirements of §1867, including the time within which to challenge petit

28   ///

**ORDER DENYING**
**MOTION FOR NEW TRIAL-        5**

1  jury selection procedures, apply to constitutional challenges.  Section 1867(e)

2  provides:

> The procedures prescribed by this section shall be the **exclusive**
> means by which a person accused of a Federal crime, the Attorney
> General of the United States **or a party in a civil case** may challenge
> **any** jury on the ground that **such jury** was not selected in conformity
> with the provisions of this title.  Nothing in this section shall preclude
> any person or the United States from pursuing any other remedy, civil
> or criminal, which may be available for the vindication or
> enforcement of any law prohibiting discrimination on account of race,
> color, religion, sex, national origin or economic status in the selection
> of persons for service on grand or petit juries.

9  (Emphasis added).  A challenge to a specific jury in a civil case must be made

10 pursuant to the exclusive procedural requirements of the JSSA and these

11 requirements cannot be circumvented by merely labeling the challenge a

12 constitutional one rather than a statutory one.  Here, the Plaintiffs-Intervenors are

13 mounting a potential challenge to the process which resulted in the selection of the

14 specific  jury which presided over their claims.  This potential challenge seeks to

15 throw out the verdict of that specific jury and have a new trial before a different

16 jury.  Counsel for Plaintiffs-Intervenors acknowledge that "the constitutional and

17 JSSA rights do not attach to a single jury, but to multiple juries through a period of

18 time." (Declaration of Blanca Rodriguez, ECF No. 1014 at Paragraph 8, Page 5).

19      It appears the second sentence of Section 1867(e) contemplates a situation

20 where a person or the United States could mount a general constitutional challenge

21 to a district court's selection of persons for service on grand or petit juries (plural),

22 contending there is a systemic flaw which results in the underrepresentation of

23 certain classes of people on those juries.  In this case, however, the names of jurors

24 and their completed questionnaires were available to counsel for the litigants prior

25 to trial.   Following questioning of prospective jurors by the court at trial, each

26 side was given time to ask additional questions, and counsel for the parties took

27 advantage of the opportunity.   At the conclusion of this process Plaintiffs-

28 Intervenors did not voice any objections to the venire nor did they communicate

**ORDER DENYING
MOTION FOR NEW TRIAL-      6**

reservations about procedures used in the Eastern District of Washington to select juries.  Neither have Plaintiffs-Intervenors shown newly obtained information suggesting a problem with the previously approved jury selection practices used in this district.  To allow litigants  to remain silent at trial, wait for an adverse verdict and then raise the issue would promote a practice which should not be condoned or encouraged.   In so noting, this court makes no judgment concerning the motives of Plaintiffs-Intervenors, only the impact such a practice would have on the court and the orderly hearing of cases coming before it.

This court has every confidence that the Eastern District of Washington's "Amended Plan For The Random Selection Of Grand And Petit Jurors" results in the selection of jurors from a fair cross-section of the community and that a challenge to the process which resulted in the venire for the jury trial in the captioned case would withstand scrutiny.  Nonetheless, because Plaintiffs-Intervenors did not comply with the timeliness requirement of the JSSA, they are foreclosed from making such a challenge to the jury which was selected and are not entitled to discovery for that purpose.

As discussed in a separate order, because of the jury verdict in the trial against Evans Fruit on the Washington Law Against Discrimination (WLAD) claims of Plaintiffs-Intervenors, the Plaintiffs-Intervenors are precluded from pursuing their WLAD claims against Defendant-Intervenor Juan Marin.  There will be no jury trial of the WLAD claims asserted by Plaintiffs-Intervenors against Marin.  Accordingly, there is no need for Plaintiffs-Intervenors to obtain discovery about jury selection procedures in order to mount a potential challenge to the selection of jurors for a trial against Marin.

///

///

///

///

**ORDER DENYING**
**MOTION FOR NEW TRIAL-      7**

Plaintiffs-Intervenors' "Motion For A New Trial In The Case Against Evans Fruit And For Discovery Pursuant To The Jury Selection And Service Act Of 1968" (ECF No. 1013) is **DENIED**.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this order and to provide copies to counsel.

**DATED** this___22nd___ day of July, 2013.

*s/Lonny R. Suko*

_____
LONNY R. SUKO
United States District Judge

**ORDER DENYING
MOTION FOR NEW TRIAL-      8**