UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>　　　　　Plaintiff,<br><br>and<br><br>ELODIA SANCHEZ, DANELIA BARJAS, and CECILIA LUA,<br><br>　　　Plaintiffs-Intervenors,<br><br>　　v.<br><br>EVANS FRUIT CO., INC.,<br><br>　　　　　Defendant. | No. CV-10-3033-LRS<br><br>**ORDER DENYING MOTION FOR A NEW TRIAL AND RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW** |

**BEFORE THE COURT** is the "Rule 59 Motion For A New Trial And Renewed Motion For Judgment As A Matter Of Law" (ECF No. 1017) filed by Plaintiffs (EEOC and Plaintiffs-Intervenors). This motion is heard without oral argument.

///

///

**ORDER DENYING MOTION FOR NEW TRIAL,** *INTER ALIA*- 1

## I. BACKGROUND

Jury trial of the Title VII claims of the EEOC class members and the Title VII and Washington Law Against Discrimination (WLAD) claims of the Plaintiffs-Intervenors against Defendant Evans Fruit Co., Inc., commenced on March 18, 2013. On April 3, 2013, the nine jurors returned a special Verdict Form (ECF No. 982) declaring they did not find by a preponderance of the evidence that any of the 14 claimants had been subjected to a sexually hostile work environment while employed at Evans Fruit. Although this made it unnecessary to answer any further questions, the jury answered "No" to the question of whether it found by a preponderance of the evidence that Juan Marin was a "proxy" of Evans Fruit at the Rattlesnake Ranch, and answered "No" to the question of whether it found by a preponderance of the evidence that Evans Fruit crew leaders at the Rattlesnake Ranch were "supervisors."

Plaintiffs now move for a new trial contending the verdict was against the clear weight of the evidence and that Defendant's counsel engaged in misconduct which was prejudicial to Plaintiffs. In addition to seeking a new trial, Plaintiffs ask the court to find as matter of law that Juan Marin was a "proxy" and that the crew leaders were "supervisors."

## II. NEW TRIAL STANDARD

Fed. R. Civ. P. 59(a)(1) provides:

> The court may, on motion, grant a new trial on all or some of the issues- and to any party- as follows:
>
> (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in a federal court . . . .

Historically recognized grounds for a new trial include, but are not limited to, claims "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving

**ORDER DENYING MOTION FOR NEW TRIAL,** *INTER ALIA*- 2

and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S.Ct. 189 (1940). "The trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n. 15 (9th Cir. 2000). Upon a Rule 59 motion of the party against whom a verdict has been returned, a district court has "the duty . . . to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990)(quoting *Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246, 256 (9th Cir. 1957)). Where a movant claims that a verdict is against the clear weight of the evidence, a new trial should be granted where, after giving full respect to the jury's findings, the "judge is left with the definite and firm conviction that a mistake has been committed" by the jury." *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987).

### III. DISCUSSION

#### A. Weight Of The Evidence- Credibility

The court has reviewed the testimony of the claimants, the testimony of Juan Marin, and the testimony of the crew leaders. The jury's conclusion that not a single claimant satisfied her burden of proving by a preponderance of the evidence that she was subjected to a sexually hostile work environment was not contrary to the clear weight of the evidence. As is typical in sexual harassment cases, the jury was entrusted with deciding credibility between the alleged harasser

**ORDER DENYING MOTION
FOR NEW TRIAL,** *INTER ALIA*- 3

and the alleged victim of harassment.[1]  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986).  See also *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68, 106 S.Ct. 2399 (1986)(in sexual harassment case, whether conduct was unwelcome "presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact").

      Evidence was presented during trial that called into question the credibility of each the claimants, perhaps some more than others (i.e., Esther Abarca lying under oath at previous court proceeding; Danelia Barajas and Norma Valdez having prior criminal convictions involving dishonesty).  This evidence is identified in detail in Defendant's response brief (ECF No. 1035 at pp. 11-26) and it was brought to the attention of the jurors by Defendant's counsel during closing argument (ECF No. 987 at pp. 2114-2130).  The evidence included the familiarity of the claimants with one another and their relationships with one another.  As such, even though the jurors may have also questioned the credibility of Juan Marin and crew leaders accused of sexual harassment (Simon Ramirez, Alberto Saldivar and Marselo Islas), the court is not left "with the definite and firm conviction" that the jurors committed a mistake in finding no claimant satisfied her burden of proving by a preponderance of the evidence that she was subjected to a sexually hostile work environment.

---

[1] "Credibility" was an inherent part of Question No. 1 on the Verdict Form asking whether "[a]s to each claimant, do you find by a preponderance of the evidence that she was subjected to a sexually hostile work environment while employed at Evans Fruit."  It was not necessary to specifically ask the jury whether  each claimant was credible.  This court has never asked such a question on a special verdict form and is unaware of any other court having done so.

**ORDER DENYING MOTION  
FOR NEW TRIAL, *INTER ALIA*-   4**

Plaintiffs assert there was testimony from former crew leaders (i.e., Cirilo Marin, Simon Ramirez, Alberto Sanchez and Alberto Saldivar ) corroborating sexual harassment by Juan Marin. The fact is, however, that none of these former crew leaders actually witnessed Juan Marin say or do anything to any claimant. What they testified to were alleged comments made to them by Juan Marin about certain women in the work place and what he had purportedly done with them. And the jurors also heard testimony calling into question the credibility of these former crew leaders (Cirilo Marin being fired from Evans Fruit for "stealing time;" Simon Ramirez, Alberto Saldivar and Marselo Islas each accused by one or more claimants of having sexually harassed them). Juan Marin himself testified that he heard complaints from several women, including some of the claimants, about alleged harassment by crew leaders.

It is reasonably possible the jury concluded it could not really ascertain who was telling the truth between the claimants and Marin, between the claimants and the crew leaders, and between Marin and the crew leaders, and as such, found claimants' burden of proof was not satisfied. The jury could have reasonably concluded that while the claimants presented substantial evidence of being sexually harassed, it still did not amount to a preponderance in light of all the other evidence presented. 50/50 is not a preponderance. See *Roy v. Volkswagen of America, Inc.*, 896 F.2d 1174, 1177 (9th Cir. 1990)("evidence did not so preponderate that it fell within the discretion of the trial judge to rule that the jury's verdict was against the great weight of the evidence"). Furthermore, the jurors could have reasonably concluded as to some of the claimants, that although they were truthful, the conduct involved was not sufficiently severe or pervasive to alter the terms and conditions of their employment (i.e., because they simply did not work long enough at Evans Fruit).

Plaintiffs were afforded sufficient time to elicit from each of the claimants all of the relevant information that was essential to each of their claims,

**ORDER DENYING MOTION
FOR NEW TRIAL,** *INTER ALIA*- 5

particularly so since liability was the only issue to be decided by the jury in the first phase of trial.  Furthermore, there was testimony from the claimants, especially on re-direct, explaining why they continued to work at Evans Fruit even after they allegedly experienced sexual harassment.  Plaintiffs were not "unjustly deprived" of time necessary to present all of the relevant information essential to meeting the burden of proof for each claimant on the issue of liability.  Plaintiffs have not identified any specific relevant testimony of a claimant which they assert they were unable to present at trial, either because of an objection from counsel before the interpreter's translation was completed[2], or because of what Plaintiffs' counsel perceived to be the need to hurry their presentation of testimony.  Moreover, the time allotted for trial was set with the consent and agreement of counsel.  The time available for the trial actually exceeded the time used and available to the parties.

### B.  "Proxy" and "Supervisor" Findings

Because the jury concluded that not one of the claimants established by a preponderance of the evidence she had been subjected to a sexually hostile work environment while employed at Evans Fruit, it was unnecessary for it to consider whether there was any liability on the part of Evans Fruit.  Accordingly, as instructed, the jury did not answer Questions Nos. 4, 5, 6 and 7 of the Verdict Form.  And although the jury did answer Question No. 2 (whether Juan Marin was a "proxy" for Evans Fruit) and Question No. 3 (whether Evans Fruit crew leaders were "supervisors"), it was unnecessary that it do so since those questions related to Evans Fruit's liability under Title VII.  It is noted that counsel for Plaintiffs did

---

[2] It is the court's recollection that it was not exclusively counsel for the Defendant who registered objections before the translation was completed.  The court recalls that Plaintiff's counsel also did this on occasion during the trial.

**ORDER DENYING MOTION
FOR NEW TRIAL,** *INTER ALIA*-  **6**

not object to the Verdict Form.

The Verdict Form could have instructed the jury that if it answered "No" as to every claimant regarding whether she had been subjected to a sexually hostile work environment, it did not need to answer any additional questions (including Questions Nos. 2 and 3). The jury's finding that no claimant was subjected to a sexually hostile work environment renders irrelevant whether Juan Marin was a "proxy" and whether the crew leaders were "supervisors."

### C. *In Limine* Rulings
### 1. Investigations

Plaintiffs assert they were prejudiced by Defendant's violation of this court's *in limine* ruling that prohibited Defendant from offering argument or evidence related to any investigation by Defendant's attorneys, including the fact of such an investigation. In a pre-trial order, the court stated:

> Mr. Evans can testify when he contacted counsel, but he will not be able to testify to any more than that because of attorney-client privilege. Allowing testimony of the alleged fact that an investigation was conducted by counsel would be prejudicial because it would suggest to the jury that the investigation was adequate, notwithstanding that Plaintiffs have had no opportunity to probe its adequacy.

(ECF No. 904 at p. 5).

At trial, Mr. Evans did make reference to interviews being conducted by his attorneys sometime after receipt from the EEOC of the third charge of discrimination, but it is not clear if he was referring to interviews conducted

///
///
///
///
///
///

**ORDER DENYING MOTION FOR NEW TRIAL,** ***INTER ALIA*-** 7

before or after the EEOC filed this lawsuit in 2010.[3] The third charge of discrimination was received in 2008, after receipt of two earlier charges in 2006. The potential relevance of any investigation conducted by or on behalf of Evans Fruit prior to filing of the lawsuit, pertained to Defendant's *Ellerth/Faragher* affirmative defense (that Evans Fruit exercised reasonable care to prevent and

///

///

///

---

[3] The colloquy between Plaintiffs' counsel and Mr. Evans was as follows:

Q: And did you fire Juan Marin after you received the next one, the third one?

A: No, we didn't fire him at that time. We had some interviews that people were brought in, dozens of people were brought into my attorney's office. They checked it and checked it, and we found something else we didn't expect, but we didn't find anybody that claimed sexual harassment.

It appears the "something else" was theft by Juan Marin, as revealed in subsequent testimony from Mr. Evans.

Q: Now, at what point in your employment of Mr. Juan Marin did you begin to understand that he wasn't the loyal employee that you had considered him for so many years?

A: When we started doing the interviews after getting the EEOC complaint.

Q: And was it only the sexual harassment allegations that you were growing concerned about?

A: When we started interviewing, we were only concerned - - and I say "we." Our lawyers started interviewing dozens of people from the ranch - -

. . . .

Q: At what point in time, Mr. Evans, did you learn that there may be some problems with theft occurring at your ranch in Sunnyside, Washington?

A: We learned in 2010 there was possibilities of some checks being written to people that had income exceeding what they made, and they came and complained to us through Department of Labor. And that was the first time in 2010 that we were aware that there was other problems besides sexual harassment.

**ORDER DENYING MOTION FOR NEW TRIAL,** *INTER ALIA*- 8

promptly correct sexually harassing behavior by Juan Marin and crew leaders).[4] This affirmative defense to liability for alleged acts perpetrated by Marin and crew leaders became irrelevant when the jury found, as a threshold matter, that no claimant was subjected to a sexually hostile work environment.  Furthermore, assuming the jury believed there was an investigation conducted by attorneys for Evans Fruit prior the filing of the lawsuit in 2010, it is not apparent how the jury would have considered that to have any bearing on whether a particular claimant

///
///
///
///
///

---

[4] Plaintiffs acknowledged this in their "Joint Motion in Limine To Exclude Evidence Re Investigations Of Complaints Of Sexual Harassment" (ECF No. 818 at p. 9): "Defendant may attempt to introduce evidence related to investigations purportedly conducted by Tim Evans or Evans Fruit attorney in support of its affirmative defense . . . ."  Plaintiffs also acknowledged this in their reply memorandum filed in conjunction with that motion: "It is obvious that Evans Fruit seeks to present evidence to the jury that Evans Fruit immediately conducted investigations in order to argue that it took prompt corrective measures in support of a *Faragher/Ellerth* affirmative defense." (ECF No. 884 at p. 3).  And finally, they also acknowledged it during trial when the 2006 charges were discussed: "[W]hen they first received those 2006 charges, that should have triggered a response from defendant and defendant is raising a Faragher-Ellerth defense now with respect to the charges and why and how they did everything that they could to prevent sexual harassment from occurring for the future incidents . . . ." (ECF No. 928 at p. 129; see also ECF No. 969 at p. 1757).

**ORDER DENYING MOTION
FOR NEW TRIAL,** *INTER ALIA*-  9

was subjected to a hostile work environment.[5] The jury knew that the 2006 charges were brought by a mother and daughter who were not among those claimants as to whom the jury was asked to determine if they had been subjected to a sexually hostile work environment. (ECF No. 929 at p. 474). If there was any inadvertent violation of the court's *in limine* ruling, it was not prejudicial to Plaintiffs and it did not impact the jury's verdict. Whether the claimants were subjected to a sexually hostile work environment did not turn on the testimony of Mr. and Mrs. Evans, but on the testimony of the claimants and the individuals who allegedly harassed them (Marin and the crew leaders).[6]

This court's *in limine* ruling also placed restrictions on Defendant offering argument or evidence related to any investigation conducted by Tim Evans. The court noted as follows:

> It is apparent . . . that Bill and Jeanette Evans do not have any personal knowledge about any investigation conducted by their son, Tim Evans, and wholly relied on what he told

---

[5] In their "Joint Motion In Limine To Exclude Evidence Re Investigations Of Complaints Of Sexual Harassment," (ECF No. 818 at pp. 9-10), Plaintiffs noted that because the claims of Angela Mendoza and Jacqueline Abundez had not survived summary judgment, "any testimony related to purported investigations . . . of [their] charges . . . are not relevant to any legal theory at issue in this action . . . ." Plaintiffs argued "[t]he only relevance that any investigation conducted by Evans Fruit would pertain to is punitive damages at the second phase of this bifurcated trial."

[6] From the way in which the Verdict Form was structured, the jury understood that whether a claimant was subjected to a sexually hostile work environment and whether Evans Fruit was liable for it were distinct questions. As Plaintiffs acknowledge, whether claimants were subjected to a sexually hostile work environment was the "threshold question."

**ORDER DENYING MOTION
FOR NEW TRIAL,** ***INTER ALIA*- 10**

> them. Mr. and Mrs. Evans cannot testify what their son told them because it is inadmissible hearsay. Mr. Evans is not precluded from testifying that he told his son to conduct an investigation, but he cannot say what his son reported to him.

(ECF No. 904 at p. 5). Based on its review of the testimony of Mr. and Mrs. Evans, the court fails to see how this particular ruling was violated during trial. If anything, both Mr. and Mrs. Evans were very careful to indicate they were not personally involved in any pre-suit investigation, that those responsibilities had been assigned to others, and they did not know what Tim Evans had done in that regard. (ECF No. 929 at pp. 474-79; 483; 489-90; 503-04; ECF No. 969 at pp. 1589; 1760).

Mr. Evans testified he was present during interviews which occurred as part of the post-suit investigation at which disclosures were made regarding alleged theft by Juan Marin. (ECF No. 929 at p. 484). It is not apparent how this investigation would have been of any relevance to Defendant's *Ellerth/Faragher* defense because it occurred after this lawsuit had already been filed by the EEOC. Plaintiffs' Joint Motion In Limine asked the court to "prohibit Evans Fruit from presenting any evidence that Tim Evans or Evans Fruit attorneys investigated and/or remedied the four EEOC charges of sexual harassment against Evans Fruit and Juan Marin." (ECF No. 818 at p. 3). Those charges, from 2006 and 2008, and the purported investigations of them by Tim Evans or Evans Fruit attorneys, occurred well before the filing of this lawsuit in 2010. The motion in limine did not refer to any post-suit investigation and the court understood the motion was limited to investigations which purportedly occurred after the EEOC charges were filed in 2006 and 2008, and of which Mr. and Mrs. Evans did not have any personal knowledge.

///
///
///

**ORDER DENYING MOTION FOR NEW TRIAL,** *INTER ALIA***-   11**

**2. Acts Of Harassment Directed At Others**

During the direct and redirect testimony of Eufrocina Hernandez (now Manjarrez), a number of hearsay objections were lodged by Defendant's counsel regarding Ms. Hernandez's personal knowledge of sexual harassment experienced by other females who worked with her at Evans Fruit. In an order entered prior to trial, this court denied Defendant's Motion In Limine No. 4 to the extent it sought to exclude all "evidence of alleged harassment that a Claimant did not personally experience or witness." This court found that pursuant to *Hawkins v. Anheuser-Busch*, 517 F.3d 321, 336 (6th Cir. 2008), a claimant would be allowed to testify regarding similar acts of harassment of which she became aware during the course of her employment, even if the harassing acts were directed at others and occurred outside of the claimant's presence. (ECF No. 905 at pp. 4-5). There was further discussion about this ruling during trial and ultimately, after some additional research and consideration, the court affirmed that this type of testimony did not constitute hearsay because it was not offered for the truth of the matter asserted, but to show the effect on the listener to establish she subjectively experienced a sexually hostile work environment. The court also identified the parameters pursuant to which the evidence would be admitted including that the work place conduct learned of had to be similar to that complained of by the claimant and the source of the information had to be clearly identified. (ECF No. 946 at pp. 728-29).

The court's affirmation of its pre-trial ruling came at the conclusion of the testimony of Magdalena Alvarez who was the third claimant to testify after Ms. Hernandez and Danelia Barajas. Accordingly, the matter was firmly resolved in Plaintiffs' favor prior to the testimony of the remaining 11 claimants. Furthermore, the court notes that it is only with regard to Ms. Hernandez that Plaintiffs identify hearsay objections by Defendant which they say contravened the court's *in limine* ruling. With regard to Magdalena Alvarez and Danelia Barajas,

**ORDER DENYING MOTION FOR NEW TRIAL,** *INTER ALIA***-   12**

Plaintiffs do not identify any hearsay objections which they claim were in contravention of the *in limine* ruling. If the EEOC believed this court wrongfully sustained hearsay objections during the testimony of Ms. Hernandez, thereby precluding testimony in contravention of the *in limine* ruling, it could have requested permission to recall Ms. Hernandez as a witness in order to elicit this testimony. It did not do so. Counsel for Plaintiffs-Intervenors requested this very relief on behalf of Danelia Barajas and it was granted, although for whatever reason, counsel did not call Ms. Barajas back to the stand. (ECF No. 946 at pp. 731-32).

In sum, either the Plaintiffs were not prejudiced by the hearsay objections sustained by the court prior to affirmation of its pre-trial *in limine* ruling, or they failed to take advantage of a reasonable opportunity to cure any prejudice.

### D. REMARKS DURING OPENING AND CLOSING

Plaintiffs contend Defendant's counsel made statements during opening and closing arguments "that were baseless and not grounded in fact, but rather served no other purpose than to demonize Plaintiffs and to incite passion and prejudice from the jurors." According to Plaintiffs, Defendant's counsel made remarks during his opening statement that "EEOC orchestrated this lawsuit as a targeted marketing campaign with inducements of money to recruit participants," but failed "to elicit a single piece of evidence to support these baseless and inflammatory remarks." Interestingly, it is noted that Plaintiffs' counsel anticipated Defendant's "targeted marketing campaign" argument and addressed it in her opening statement to the jury, prior to Defendant's counsel bringing it up in his opening statement. Plaintiffs' counsel told the jury:

> Now . . . when defendant's counsel puts on their opening statement, (sic) will show you a slide which is a slide from a presentation from one of EEOC's trainings. They will–
> in that slide it references that you can get monetary damages if you sue a company for discrimination. They

ORDER DENYING MOTION
FOR NEW TRIAL, *INTER ALIA*- 13

> will argue that some of these women, after that slide was presented in this training, became - - wanted to be part of the case in order to get some money. There is no evidence that any of these women were part of that meeting or have ever seen that slide.

(ECF No. 927 at pp. 17-18).

The slide in question (Defendant's Proposed Ex. 532) was not admitted into evidence in any form, (see ECF No. 969 at pp. 1547-1554), and in his opening statement, Defendant's counsel acknowledged that none of the claimants were at the January 2011 meeting at which the slide was presented. In closing argument, Plaintiffs' counsel told the jury:

> Not one person testified at trial that there was ever any mention, no matter how they heard of this case, no matter how they had come into contact with the EEOC, not one mention ever with respect to hearing anything about money. And notice that defendant never challenged that. They had every single claimant go up on that stand and they cross-examined each and every single claimant and they picked apart every single thing that they could with respect to their testimony, but they never even broached that topic. Why? Because, I submit, ladies and gentlemen, it's a sham. It is nothing more than that something to put in your minds, to plant in your brains without a single shred of evidence, without anything to back it up, and it was just something without base and, frankly, outrageously offensive to the EEOC to say that we had this campaign that we were offering and inducing people to join this lawsuit.

(ECF No. 987 at pp. 2048-49).

In his opening statement, as part of his "recruitment effort" argument, Defendant's counsel represented that the EEOC required the Evanses to provide the addresses and names of everyone who worked at Evans Fruit. Evidence of this was offered at trial through the testimony of Mrs. Evans (ECF No. 969 at pp. 1755-56) and Defendant's counsel brought it up in her closing argument in an effort to rebut the argument of Plaintiffs' counsel that it was a "sham" to suggest the claimants had been recruited by EEOC:

> Mrs. Evans testified that she was required by the EEOC to provide them with the names and addresses of all

**ORDER DENYING MOTION FOR NEW TRIAL,** *INTER ALIA*- **14**

>current and former employees of Evans Fruit and then the EEOC sent letters out to all of those people. And that's a lot of people. It's just a wonder that there are only 14 of them making a claim now, given that they received encouragement, that they were told a lawsuit was being filed, and I think it is disingenuous in the extreme for the EEOC to say these women had no idea they might get money from this lawsuit.

(ECF No. 987 at pp. 2087-88).

All of this considered, the court concludes Plaintiffs were not prejudiced by Defendant's opening statement. Plaintiffs knew what was coming from the Defendant and had an adequate opportunity to rebut Defendant's recruitment theory and point out to the jury its purported flaws and limitations.

Likewise, Plaintiffs were not prejudiced by the assertion of Defendant's counsel in closing that "the EEOC tried to trick Bill Evans when he was on the stand and get him to say that Wendy Granados's charge was served on him in 2007." Indeed, this was essentially admitted by Plaintiffs in their rebuttal to Defendant's closing:

>Mr. Evans did look at some documents, and we're accused of tricking him. Yes, he was not served with a particular document until 2008, but I represent to you, and you could tell from your own assessment of what happened there when Mr. Evans looked at the document that was dated 2007, looked at a second document that was dated 2007 that referenced a certain charge. You decide for yourself whether that came in in (sic) 2007 or 2008. **It actually doesn't really matter.**
>
>**The point is they received another charge and they still did nothing . There's no record, there's no evidence of any investigation happening. There is no record, there's no investigation that they did any anything, that they ever talked to him [Juan Marin] after those charges came in.**

(ECF No. 987 at pp. 2136-37)(Emphasis added).

Plaintiffs also were not prejudiced by Defendant's assertion in its closing argument that the EEOC did not investigate the 2008 charges against Evans Fruit (by Wendy Granados and Norma Valdez). In its closing rebuttal argument,

///

**ORDER DENYING MOTION FOR NEW TRIAL, *INTER ALIA*-  15**

EEOC's counsel asked the jury to recall the testimony of Mrs. Evans which EEOC says contradicted Defendant's assertion:

> You saw when I asked Mrs. Evans, [d]o you recall being interviewed by the EEOC investigator? Do you recall that Tim Evans was interviewed by the EEOC investigator? Now, it's true Mrs. Evans suddenly had a bout of amnesia, when she was able to recall every single piece of evidence and fruit and land and parcel going back to 1962, but suddenly she could not remember if she was interviewed by an EEOC investigator. How many times in a person's lifetime do you get interviewed by an EEOC investigator regarding your company about allegations of sexual harassment that is happening at your company? She didn't deny that she wasn't (sic) interviewed. She just simply couldn't remember. I submit to you that is absolutely not credible and it was evasive.

(ECF No. 987 at pp. 2142-43).

Plaintiffs take issue with Defendant's statement during closing that "the EEOC and Northwest Justice also have argued to you at the beginning and today that the Evans didn't care about their employees, they're just a bunch of rich white people who are focused on money." (ECF No. 987 at p. 2100). This statement drew an objection from Plaintiffs' counsel which was overruled by the court. It is highly unlikely the statement incited "passion and prejudice" in the jurors, all of whom filled out not only a standard questionnaire, but also a special supplemental questionnaire proposed by Plaintiffs' counsel (ECF No. 791-1), and then were subject to thorough voir dire examination by the court and counsel. From the outset, Plaintiffs framed this dispute for the jury as a contest pitting the powerful "haves" with the powerless "have nots." Thus, in her opening statement, Plaintiffs' counsel told the jury:

> There is no denying that Evans Fruit is a major force in this community. As an employer, it employs thousands of low-paid workers . . . .
>
> What Bill and Jeanette Evans did, the evidence will show, is a pretty remarkable thing in the way they grew this company. They are a force in this community with this company and it is to be admired. It is very admirable what they have done. But as the evidence will also show, on the way to growing the company over the years, and making it the state of the art in the

**ORDER DENYING MOTION**
**FOR NEW TRIAL,** *INTER ALIA*- **16**

> packing warehouse and sales, they abandoned the workers back in the fields and they left them in the hands of the Sunnyside ranch, one of their second largest ranches, of a foreman named Juan Marin.
>
> . . . .
>
> You will see through the evidence that it wasn't until allegations were made that impacted Evans Fruit['s] pocketbook did they care to stop and pay attention. This witness with the documentary evidence also had other information. They don't care about that. Only when it hit their pocketbook.

(ECF No. 927 at pp. 18-19; p. 28).

And in closing argument, Plaintiffs' counsel reiterated this to the jury:

> Ladies and gentlemen, by not taking any preventive measures to correct or prevent Juan Marin's harassment, this emboldened him to continue his abuse of the workers whose livelihoods he held in their hands and while the owners where 60 miles away in Cowiche in their gleaming state-of-the-art facilities making deals to sell to Russia and Africa and Saudi Arabia and all over the world. At the Sunnyside ranch, that was Juan's world. Like crew leader Alberto Saldivar told you, Juan Marin was like God at the Sunnyside ranch.
>
> . . . .
>
> But Evans Fruit also grew that company to the gigantic powerhouse that it is today off the backs of those workers, and Evans Fruit turned their backs on them. They refused, Evans Fruit refused to follow the same rules that everybody else has to follow. When you choose to be an employer, it also means that you have some fundamental basic responsibilities towards your workers. And as an employer, you absolutely have the responsibility to provide a safe workplace for your employees.

(ECF No. 987 at p. 2061 and pp. 2071-72).

Plaintiffs were entitled to pursue this impassioned argument and present evidence which they thought established its validity, but they could not reasonably expect that it would not be described in the equally impassioned fashion Defendant's counsel chose to describe it during closing argument. The jurors understood that Mr. and Mrs. Evans were white and that the claimants were

**ORDER DENYING MOTION
FOR NEW TRIAL,** *INTER ALIA*- **17**

Hispanic. In opening statement, Plaintiffs' counsel reminded the jury about the language barrier: "All of these women will testify that they knew that the owners did not speak Spanish and they, the women, most of them, did not speak English or all of them didn't." (ECF No. 927 at p. 25). This was reinforced by the fact that most of the claimants used interpreters while giving testimony. The court rejects any suggestion, however, that the jury considered race in assessing the credibility of the claimants and the merits of their claims. As discussed above, the verdict was not against the clear weight of the evidence and there was evidence from which the jury could reasonably conclude either that a particular claimant lacked credibility or that she was otherwise not subjected to conduct that was severe enough to alter the terms and conditions of her employment. The court believes the jurors evaluated the evidence in accordance with the instructions given to them, just as in any sexual harassment litigation, and no matter the ethnicity of the parties. Moreover, the individuals alleged to have engaged in sexually harassing conduct are Hispanic, like the claimants. In deciding whether a claimant was subjected to sexually harassing conduct, the jurors considered her testimony in conjunction with the testimony from the alleged harasser(s). The credibility of the Evanses was not at issue in the jury's determination of whether a claimant was subjected to sexually harassing conduct. This was basically acknowledged by counsel for Plaintiffs-Intervenors in her closing:

> Now, Evans Fruit's defense is a complete denial. It never happened. It claims that these women were never sexually harassed, and the only person really that defendant has brought to refute these claims is Juan Marin himself. He's the only person who is here to refute these claims. So, ladies and gentlemen, I submit to you that Evans Fruit's defense is completely reliant on whether you can believe Juan Marin or not.

///
///
///

**ORDER DENYING MOTION
FOR NEW TRIAL,** *INTER ALIA*- **18**

(ECF No. 987 at p. 2077).[7]

Defendant did not implicitly ask the jury to decide the case based on race. It asked the jury to consider the obvious economic disparity between Defendant and the claimants and whether claimants had a financial incentive to not tell the truth or to embellish the truth.

Finally, the jury was specifically instructed that the claims asserted were against Evans Fruit Corporation and not Mr. and Mrs. Evans personally. Counsel for Plaintiffs-Intervenors reminded the jury of this during her closing argument (ECF No. 987 at p. 2074). Accordingly, the court fails to see how the jury could have improperly inferred from remarks by Defendant's counsel during closing argument that this lawsuit was in fact against Mr. and Mrs. Evans in their personal capacities.

## IV. CONCLUSION

The jury's verdict is not contrary to the clear weight of the evidence, is not based upon false or perjurious evidence, and does not represent a miscarriage of justice. Accordingly, Plaintiffs' "Rule 59 Motion For A New Trial And Renewed

///
///
///
///
///

---

[7] The court disagrees with the assertion that Evan's Fruit's defense was "completely reliant" on the credibility of Juan Marin. As discussed herein, whether sexual harassment occurred also depended on the credibility of the claimants and whether the conduct alleged to have occurred was severe enough to alter the terms and conditions of employment.

**ORDER DENYING MOTION**
**FOR NEW TRIAL,** *INTER ALIA*- **19**

1 | Motion For Judgment As A Matter Of Law" (ECF No. 1017) is **DENIED** for the
2 | reasons set forth herein.
3 |     **IT IS SO ORDERED.** The District Court Executive is directed to enter
4 | this order and to provide copies to counsel.
5 |     **DATED** this ___22nd___ day of July, 2013.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
United States District Judge

**ORDER DENYING MOTION FOR NEW TRIAL,** *INTER ALIA*- 20